[No. B015977. Second Dist., Div. Three. Oct. 21, 1986.]

LAWRENCE STORCH et al., Plaintiffs and Appellants, v.
STANLEY ROBERT SILVERMAN et al., Defendants and Respondents.

672

**COUNSEL**

Greene, O'Reilly, Broillet, Paul, Simon, McMillan, Wheeler & Rosenberg, Michael L. Goldberg and Craig J. de Recat for Plaintiffs and Appellants.

Patterson, Ritner, Lockwood, Zanghi & Gartner, Thomas P. Higgins, Tuverson & Hillyard, Thomas E. Tootell, La Follette, Johnson, Schroeter & De Haas, Alfred W. Gerisch, Jr., Melinda W. Ebelhar, Horvitz, Levy & Amerian, McKay, Byrne, Graham & Van Dam and Mary I. McInerny for Defendants and Respondents.

**OPINION**

**ARABIAN, J.—**

### INTRODUCTION

Plaintiffs and appellants, Lawrence Storch, Gail Storch and minor Shara Storch, by and through her guardian ad litem (plaintiffs or the Storches), appeal from a judgment of dismissal of actions for medical malpractice and negligent infliction of emotional distress entered after the trial court sustained demurrers of defendants and respondents Stanley Robert Silverman, M.D., Joon G. Oh, M.D., and Herbert Goldin, M.D. (physicians) to the first amended complaint, without leave to amend, and granted a motion of

defendant and respondent Westlake Community Hospital (Westlake or hospital) to strike portions of the complaint. (Physicians and hospital collectively will be referred to as defendants.)

## STATEMENT OF FACTS

The first amended complaint[1] consisted of a cause of action for medical malpractice brought on behalf of 10-year-old Shara Storch against the defendant physicians and hospital, alleging that the defendants "negligently, carelessly and recklessly diagnosed, examined, cared for and treated [Shara] and rendered and reported the opinion that [Shara] was a victim of child abuse." It was also alleged that the defendants "supported and/or submitted a report of child abuse without knowledge or reasonable suspicion as to the existence of such child abuse," and that Shara suffered injuries as a result of their actions.

In the second cause of action for negligent infliction of emotional distress, plaintiffs alleged that defendants "negligently, wantonly, recklessly and carelessly diagnosed the condition" of plaintiff Shara. It was further alleged that the diagnosis was a finding of child abuse which the defendants ".knew or should have known would and did cause severe emotional distress directly to the plaintiffs and each of them," and that as a direct and proximate result of the conduct of the defendants, plaintiffs "were caused to and did become the subject of police and protective service agency interrogation, investigation, and/or accusations," and suffered "shock and nervousness, mental suffering and severe emotional distress."[2] Plaintiffs did not allege that the report was false or that defendants knew the report was false.

---

[1]The trial court had sustained demurrers against the original complaint with leave to amend.

[2]Papers submitted by the parties in support of various motions and demurrers provide the following information regarding the circumstances which led to the filing of the complaint: Shara Storch, 10 years old, was seen by Stanley Silverman, M.D., a gynecologist, on February 21, 1984, for complaints of pain in her lower abdomen. Dr. Silverman noted an ulceration in the vaginal area and treated her. A week later she returned to Dr. Silverman complaining of an aggravated condition. Dr. Silverman recommended that Shara be examined further under general anesthesia. Shara was admitted to the Westlake Community Hospital and Dr. Goldin, a pediatrician, performed a physical examination on Shara in order to determine her medical fitness for tolerating general anesthesia. Dr. Silverman's examination of Shara under anesthesia revealed potential trauma to the vagina. Several cultures were taken and subsequently examined by Dr. Oh, a pathologist, whose cytopathology report of March 2, 1984, noted that the slides revealed "numerous degenerating structures, consistent with degenerating sperm." After being so advised, Dr. Silverman submitted a report of suspected sexual abuse of a minor to the Public Social Services Agency of Ventura County. Investigation by the Ventura County Sheriff's Department concluded that no sexual molestation had occurred. That conclusion was based upon the findings of the crime laboratory and the Ventura County coroner that examination of the slides did not reveal the presence of sperm. The case was closed on March 21, 1984.

In response to plaintiffs' first amended complaint, defendants filed demurrers, motions to strike, and motions for summary adjudication of the issues. The trial court granted Westlake's motion to strike portions of the complaint concerning the child abuse report and sustained the demurrers without leave to amend, explaining that Penal Code section 11172, subdivision (a), provides absolute immunity from civil liability for all medical practitioners involved in the reporting of suspected child abuse. The motions for summary adjudication were taken off calendar. The court subsequently ordered the action dismissed "as to all parties." The Storches appeal from the judgment of dismissal of the first amended complaint as to both causes of action against Dr. Silverman, Dr. Oh, Dr. Goldin, and Westlake.

ISSUE

■ In this case of first impression we are asked, does Penal Code section 11172, subdivision (a)[3] grant medical practitioners absolute immunity from civil liability for reporting an instance of suspected child abuse to a child protective agency?[4] We answer, yes.

DISCUSSION

Our review of the sustaining of the demurrers is limited by established principles. ■ A demurrer admits the truth of all properly pleaded material allegations in the complaint regardless of the difficulty of proof. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) ■ The allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties. (*King* v. *Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857].) However, all intendments weigh in favor of the regularity of the trial court proceedings and the correctness of the judgment. ■ The trial court's judgment of dismissal following the sustaining of defendants' demurrers will be affirmed on appeal unless clear error or abuse of discretion is demonstrated. (*Banerian* v. *O'Malley* (1974) 42 Cal.App.3d 604, 610 [116 Cal.Rptr. 919].) As with the demurrers, the propriety of the trial

---

[3]Penal Code section 11172, subdivision (a), in relevant part, provides: "No child care custodian, medical practitioner, nonmedical practitioner, employee of a child protective agency, or commercial film and photographic print processor who reports a known or suspected instance of child abuse shall be civilly or criminally liable for any report required or authorized by this article. Any other person reporting a known or suspected instance of child abuse shall not incur civil or criminal liability as a result of any report authorized by this article unless it can be proven that a false report was made and the person knew that the report was false."

[4]Plaintiffs also raise the issue of whether or not the amended complaint states a cause of action for negligent infliction of emotional distress. Because we hold that defendants enjoy absolute immunity from all civil liability, it is unnecessary to address this issue.

court's grant of Westlake's motion to strike rests upon the correctness of its conclusion that the law grants defendants immunity.

### 1. *The duty to report child abuse.*

The state has a strong interest in the prevention of child abuse. Since the child abuser often repeats the abuse, identification of a victim offers an opportunity for intervention by authorities.[5] However, identification is often difficult due to the natural characteristics of the child and the private or special circumstances in which the abuse may occur. In order to address this serious problem, the California Legislature has enacted a comprehensive reporting scheme, the Child Abuse Reporting Law, Penal Code section 11165 et seq.,[6] requiring persons in positions where abuse is likely to be detected to report promptly all suspected and known instances of child abuse to authorities for follow-up investigation.

The law imposes an affirmative duty upon specified professionals, including medical practitioners, as follows:

"Except as provided in subdivision (b), any child care custodian, medical practitioner, nonmedical practitioner, or employee of a child protective agency who has knowledge of or observes a child in his or her professional capacity or within the scope of his or her employment whom he or she knows or reasonably suspects has been the victim of child abuse shall report the known or suspected instance of child abuse to a child protective agency immediately or as soon as practically possible by telephone and shall prepare and send a written report thereof within 36 hours of receiving the information concerning the incident. For the purposes of this article, 'reasonable suspicion' means that it is objectively reasonable for a person to entertain such a suspicion, based upon facts that could cause a reasonable person in a like position, drawing when appropriate on his or her training and experience, to suspect child abuse." (§ 11166, subd. (a).)[7] The law also allows, but

---

[5] See, *Landeros* v. *Flood* (1976) 17 Cal.3d 399, 412, fn. 9 [131 Cal.Rptr. 69, 551 P.2d 389, 97 A.L.R.3d 324], and accompanying text regarding the "battered child syndrome."

[6] All statutory references are to the Penal Code unless otherwise indicated.

[7] Section 11166, subdivision (b), provides: "Any child care custodian, medical practitioner, nonmedical practitioner, or employee of a child protective agency who has knowledge of or who reasonably suspects that mental suffering has been inflicted on a child or his or her emotional well-being is endangered in any other way, may report such known or suspected instance of child abuse to a child protective agency." Section 11165, subdivision (g), provides:
"'Child abuse' means a physical injury which is inflicted by other than accidental means on a child by another person. 'Child abuse' also means the sexual abuse of a child or any act or omission proscribed by Section 273a (willful cruelty or unjustifiable punishment of

does not require, "[a]ny other person" to report a known or suspected instance of child abuse to a child protective agency. (§ 11166, subd. (d).) ██ The statute only requires the reporter to make an initial report and does not impose investigative duties upon him or her. (*People* v. *Younghanz* (1984) 156 Cal.App.3d 811, 818 [202 Cal.Rptr. 907].) The reports are confidential and may be disclosed only to specified persons and agencies. (§ 11167.5.)

██ This reporting obligation is of such importance that it takes precedence over any physician-patient or psychotherapist-patient privilege. (§ 11171, subd. (b); see *People* v. *Stritzinger* (1983) 34 Cal.3d 505, 512 [194 Cal.Rptr. 431, 668 P.2d 738].) Any person who fails to report as required is guilty of a misdemeanor. (§ 11172, subd. (e).) ██ A medical practitioner required to report suspected child abuse who fails to do so may be liable in civil damages for any subsequent injury to the child. (*Landeros* v. *Flood, supra,* 17 Cal.3d 399.)

## 2. *Immunity Statute*

Recognizing the burden placed upon those professionals required to report instances of suspected and known child abuse, the Legislature provided broad immunity to protect these mandated reporters. Section 11172, sub-

---

a child) or 273d (corporal punishment or injury). 'Child abuse' also means the neglect of a child or abuse in out-of-home care, as defined in this article."

Section 11165, subdivision (h), provides:

"'Child care custodian' means a teacher, administrative officer, supervisor of child welfare and attendance, or certificated pupil personnel employee of any private school; an administrator of a public or private day camp; a licensee, an administrator, or an employee of a community care facility licensed to care for children; headstart teacher; a licensing worker or licensing evaluator; public assistance worker; an employee of a child care institution including, but not limited to, foster parents, group home personnel and personnel of residential care facilities; a social worker or a probation officer or any person who is an administrator or presenter of, or a counselor in, a child abuse presentation program in any public or private school."

Section 11165, subdivision (i), provides: "'Medical practitioner' means a physician and surgeon, psychiatrist, psychologist, dentist, resident, intern, podiatrist, chiropractor, licensed nurse, dental hygienist, or any other person who is currently licensed under Division 2 (commencing with Section 500) of the ̣Business and Professions Code, any emergency medical technician I or II, paramedic, or other person certified pursuant to Division 2.5 (commencing with Section 1797) of the Health and Safety Code, or a psychological assistant registered pursuant to Section 2913 of the Business and Professions Code."

Section 11165, subdivision (j), provides: "'Nonmedical practitioner' means a state or county public health employee who treats a minor for venereal disease or any other condition; a coroner; a marriage, family, or child counselor; or a religious practitioner who diagnoses, examines, or treats children."

Section 11165, subdivision (k), provides: "'Child protective agency' means a police or sheriff's department, a county probation department, or a county welfare department."

division (a), provides that no such mandated reporter "shall be civilly or criminally liable" for any required or authorized report. "Any other person" who voluntarily reports child abuse is also immune from liability "unless it can be proven that a false report was made and the person knew that the report was false." (*Ibid.*)

To further protect these mandated reporters and encourage the reporting of instances of child abuse, section 11172, subdivision (c), adopted in 1984, provides for the payment of reasonable attorneys' fees by the state on behalf of persons who are sued as a result of filing a required report. (Stats. 1984, ch. 1718, § 3, p. 501.)[8]

■ Plaintiffs contend that the immunity granted mandated reporters is limited, not absolute. They stress that section 11172, subdivision (a), states that no medical practitioner "shall be civilly . . . liable for any report required or authorized" by the law, and contend immunity from liability is coextensive with the duty to report. Since a medical practitioner is required to report only those instances of child abuse which he or she "knows or reasonably suspects" may have occurred (§ 11166, subd. (a)), they conclude that immunity exists only for reports that meet those criteria. Thus, they argue, there is no immunity for negligent or knowingly false reports.

Plaintiffs' interpretation, however, renders the immunity statute virtually meaningless. There is no need for immunity when there can be no liability, as in the case of reports that are true or based upon objectively reasonable suspicion.[9] "An interpretation which gives effect is preferred to one which makes void." (Civ. Code, § 3541; see *Sondeno* v. *Union Commerce Bank* (1977) 71 Cal.App.3d 391, 395 [139 Cal.Rptr. 229].) The issue of the reasonableness of the reporter's suspicions would potentially exist in every reported case.

The legislative scheme is designed to encourage the reporting of child abuse to the greatest extent possible to prevent further abuse. Reporters are

[8]Plaintiffs assert that this provision indicates that the Legislature contemplated meritorious actions for negligent reporting. This argument lacks merit. This provision simply recognizes the litigious nature of our society. Section 11172, subdivision (c), states, "The Legislature finds that even though it has provided immunity from liability to persons required to report child abuse, that immunity does not eliminate the *possibility* that actions *may* be brought against those persons based upon required reports of child abuse. In order to further limit the financial hardship that those persons may incur as a result of fulfilling their legal responsibilities, it is necessary that they not be unfairly burdened by legal fees incurred in defending those actions." (Italics added.) A mandated reporter may present a claim for attorneys' fees if the case is dismissed upon his or her demurrer or motion for summary judgment or if he or she prevails in the action. (*Ibid.*)

[9]The statute employs an objective standard for the reasonableness of the suspicion. See section 11166, subdivision (a), quoted, *ante.*

required to report child abuse promptly and they are subject to criminal prosecution if they fail to report as required. Accordingly, absolute immunity from liability for all reports is consistent with that scheme.

### 3. *Legislative History*

Our fundamental objective in construing section 11172, subdivision (a), is to ascertain and give effect to the legislative intent. (*County of Ventura* v. *Stark* (1984) 158 Cal.App.3d 1112, 1116 [205 Cal.Rptr. 139].) Because plaintiffs raise some doubt as to that intent, we take recourse to legislative history for guidance. (See *County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 741 [97 Cal.Rptr. 385, 488 P.2d 953].) That history[10] makes it clear the Legislature intended that those required to report suspected cases of child abuse would be absolutely immune from liability.

Former section 11161.5, the predecessor to the Child Abuse Reporting Law adopted in 1980 (§ 11165 et seq.), provided that "[n]o person shall incur any civil or criminal liability as a result of making any report authorized by this section unless it can be proven that a false report was made and the person knew or should have known that the report was false." Thus, prior to the enactment of section 11172, all reporters of child abuse, whether required to report or not, were immune from liability for a false report only if they did not know or should not have known that the report was false.

When the Legislature enacted section 11172 in 1980, it deleted the "known or should have known" qualification for those persons required to report suspected cases of child abuse and continued that qualification only for those who voluntarily make such a report. The deletion evidences a legislative intention to eliminate this limitation on immunity as to those required to report. (See *Louisiana-Pacific Corp.* v. *Humboldt Bay Mun. Water Dist.* (1982) 137 Cal.App.3d 152, 159 [186 Cal.Rptr. 833].) A report of the State Bar of California on an Assembly bill, submitted to the Legislature prior to the enactment of section 11172, explained the necessity of granting a broad immunity to persons required to report suspected cases of child abuse while affording only a limited immunity to others.

"In 1975 and 1976, the Legislature amended Section 11161.5 of the Penal Code to add an exception to the civil and criminal immunity which provided that 'unless it can be proven that a false report was made and the person

---

[10]Pursuant to Evidence Code section 452, subdivision (c), we take judicial notice of the various legislative bills, reports and legislative matters cited *infra*. (*Post* v. *Prati* (1979) 90 Cal.App.3d 626, 634 [153 Cal.Rptr. 511].)

knew or should have known that the report was false.' Although the chilling effect of the amendment is difficult to measure, the limitation on immunity is certainly sufficient cause for enumerated professionals to hesitate when they are aware that an angry parent may initiate litigation for damages for a report which is subsequently proven to be false. The cost of legal representation to defend, and the human toll in time wasted and anxiety suffered, are sufficient to deter many potential reporters. Since there exist numerous legal and personal impediments to reporting to the detriment of an abused child, it is reasonable to eliminate the limitation on civil and criminal immunity for objective non-biased professionals.

"Further, extending the limited civil and criminal immunity to '*any other person* making a report of child abuse or molestation' will encourage members of the general public to report known cases of child abuse. The limitation on the immunity for false or negligent reports is necessary to prevent a vindictive former spouse or neighbor from making a knowingly false report." (State Bar of Cal., Rep. on Assem. Bill No. 2497 (1979-1980 Reg. Sess.) p. 2.)

Comment on subsequent amendments to section 11172 provides further evidence that it was the legislative intent to create an absolute immunity for medical practitioners who report suspected child abuse. The legislative counsel explained in regard to Assembly Bill No. 518, introduced in 1981: "Under existing law, child care custodians, medical practitioners, nonmedical practitioners, and employees of a child protective agency are required to report instances of suspected child abuse, as specified. All of the foregoing persons, except employees of a child protection agency, are exempted from all civil and criminal liability in connection with such reports. . . .

"This bill would extend the absolute exemption from civil and criminal liability to include employees of child protective agencies. . . ." (Legis. Counsel's Dig. of Assem. Bill No. 518 (1981-1982 Reg. Sess.) pp. 1-2.)

The resulting amendments further demonstrate that the intent was to grant absolute immunity to those required to report. The Legislature eliminated the "or should have known" language from the *limited* immunity afforded to voluntary reporters. As explained in a report of the Senate Committee on Judiciary, "immunity would be extended to all people who report known or suspected instances of child abuse or neglect unless they actually *knew* the report to be false." (Sen. Com. on Judiciary Rep. on Assem. Bill No. 518 (1981-1982 Reg. Sess.) p. 3, italics in original.) Those who voluntarily report child abuse are liable for intentionally false reports only. Those required to report enjoy greater immunity.

We can conceive of a situation in which a medical practitioner maliciously and knowingly submits a false report of child abuse with the intent to vex, annoy and harass an innocent party. However, we feel confined by the legislative history of section 11172 to a result which grants total immunity to the mandated reporter.

### 4. *Immunity as a bar to civil actions against the physicians and hospital.*

Clearly the immunity provision precludes civil actions against a mandated reporter who telephones the agency and submits a written report. But is there immunity for those mandated reporters who are involved in the identification of an instance of child abuse but do not personally report it to the authorities? Again, we answer yes.

In many instances the discovery of child abuse will be a collaborative event. In recognition of team participation in reporting child abuse, section 11166, subdivision (e), provides: "When two or more persons who are required to report are present and jointly have knowledge of a known or suspected instance of child abuse, and when there is agreement among them, the telephone report may be made by a member of the team selected by mutual agreement and a single report may be made and signed by such selected member of the reporting team. Any member who has knowledge that the member designated to report has failed to do so, shall thereafter make the report."

The complaint alleges that all defendants "supported and/or submitted" a report. Therefore, each physician either actually submitted the report or "supported" the submission of the report by a team member, acting as his agent. Team immunity is consistent with the purpose and intent of the Legislature in promoting the reporting of child abuse. Limitation of immunity to the person making the telephone call to the agency or signing the report would defeat that purpose.

Defendant physicians, who are mandated reporters, are immune from liability to the plaintiffs for the two causes of action, both of which are premised upon the allegations of negligent reporting of suspected child abuse. The record discloses no basis to conclude that plaintiffs could have alleged facts to state a cause of action which would not be barred by the immunity statute; therefore, the demurrers were properly sustained.

The grant of the motion to strike and the subsequent dismissal of the action against the hospital were also proper. Inasmuch as the liability of the hospital, under the doctrine of respondeat superior, was necessarily

predicated upon the negligent report of child abuse by one of the other defendants, the immunity statute defeats any action against the hospital as well. (See *McKenna* v. *Cedars of Lebanon Hospital* (1979) 93 Cal.App.3d 282, 288 [155 Cal.Rptr. 631].)

## CONCLUSION

It is evident that, in the tension between the grant of civil immunity occasioned by a duty to report and the spectre of a false report, some sacrifice is borne by those who may be wrongfully investigated but unable to seek legal redress.

Faced with an area of shadowy wrong and the burden of balancing societal interests, as faithful guardians, the Legislature in its response has turned to useful account the garnered wealth of their experience.

In the enactment of the Child Abuse Reporting Law, it has wisely provided a haven of refuge to those who rescue the helpless.

When engaged in the alleviation of pain from those who suffer, the law knows no finer hour.

## DISPOSITION

The judgment of dismissal is affirmed.

Klein, P. J., and Herrington, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.