92 F.3d 1195
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Lauren WALLIS, By and Through her Guardian Ad Litem;
Rebecca Lynn WALLIS, Guardian Ad Litem; Jessie Wallis, By
and Through his Guardian Ad Litem; William Lawrence Wallis,
Guardian Ad Litem Plaintiffs-Appellants,
v.
Mary SPENCER, M.D.; Candace Young, Ph.D.; City of
Escondido; Cathy McLennan, Defendants-Appellees.
 No. 94-56434.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 10, 1996.
Decided July 23, 1996.
 
 1
 Before: O'SCANNLAIN and TROTT, Circuit Judges; VAN SICKLE,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Lauren Wallis, by and through her guardian ad litem, Rebecca Lynn Wallis, and Jessie Wallis, by and through his guardian ad litem, William Lawrence Wallis, appeal the district court's grant of summary judgment in favor of the City of Escondido and the dismissal of Dr. Mary Spencer in the Wallis family's 42 U.S.C. § 1983 action, alleging that the defendants violated their civil rights by removing Lauren and Jessie from the custody of their parents.
 
 
 4
 * We first consider the Wallis family's contention that collateral estoppel does not apply and that summary judgment in favor of the City of Escondido was erroneous. The California Supreme Court has established a three-prong test to determine whether collateral estoppel bars relitigation of an issue decided at a previous proceeding:
 
 
 5
 (1) [T]he issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].
 
 
 6
 People v. Sims, 186 Cal.Rptr. 77, 87 (1982) (quoting People v. Taylor, 117 Cal.Rptr. 70, 73 (1974)). California also requires the issue to be "actually litigated." Sims, 186 Cal.Rptr. at 87. An issue is actually litigated "when it is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined. A determination may be based on a failure of proof." Id.
 
 
 7
 In addition to the three-pronged collateral estoppel test, California courts also utilize a formulation of collateral estoppel found in Restatement (Second) of Judgments § 27. See Long Beach Grand Prix Assoc. v. Hunt, 31 Cal.Rptr.2d 70, 74 (Ct.App.1994); Barker v. Hull, 236 Cal.Rptr. 285, 288 (1987). Section 27 states:
 
 
 8
 When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.
 
 
 9
 The parties do not dispute that the plaintiffs were parties to the proceedings before the juvenile court. The Wallis family does dispute the other two factors, however, contending that the issue it seeks to litigate is not identical to the one necessarily decided at the juvenile court proceeding and that the previous proceeding did not result in a final judgment on the merits. In addition, the family asserts that the issue was not "actually litigated" as required by California law.
 
 
 10
 As recognized by the district court, the issue resolved by the juvenile court referee is identical to the issue the Wallis family now seeks to litigate--whether the Escondido Police Department properly removed the children from the home. The juvenile court stated:
 
 
 11
 facts have been presented showing the reason initial removal was necessary. The facts constitute a substantial danger to the physical health of the minor and there is no reasonable means to protect the minor's physical or emotional health without removing the minor from the parent's physical custody at this time.... [L]ack of preplacement preventive services and efforts were reasonable, and the minor could not safely remain at home, even with reasonable services being provided.
 
 
 12
 However, the family is correct that this issue was not necessarily decided. Although the Juvenile Court initially found that the removal of the children was proper, the court issued a final judgment in the second hearing which ordered the children returned and all charges against the parents dismissed. Thus, since the earlier order was not necessary for, or essential to, the final judgment, collateral estoppel cannot apply. See Restatement (Second) of Judgments, § 27, cmt. h ("If issues are determined but the judgment is not dependent upon the determinations, relitigation of the issues in a subsequent action between the parties is not precluded.")
 
 
 13
 In light of the absence of this factor which precludes the application of collateral estoppel, we need not reach the Wallis family's contentions regarding final judgment and "actual litigation." We reverse the district court's finding of summary judgment for the City of Escondido.
 
 II
 
 14
 We next consider whether dismissal of Dr. Spencer was proper. Penal Code section 11166(a) requires health practitioners who suspect, or reasonably should suspect, that a child has been a victim of child abuse to report such immediately to a child protective agency. Failure to comply with Penal Code section 11166(a) is a misdemeanor, punishable by up to six months in jail or by a fine of $1,000, or both. Cal.Penal Code § 11172(e).
 
 
 15
 Penal Code section 11172(a) provides that reporters of known or suspected child abuse are immunized from liability. It sets forth in pertinent part:
 
 
 16
 (a) No ... health practitioner, ... who reports a known or suspected instance of child abuse shall be civilly or criminally liable for any report required or authorized by this article.... No person required to make a report pursuant to this article nor any person taking photographs at his or her direction, shall incur any civil or criminal liability for taking photographs of a suspected victim of child abuse, without parental consent, or for disseminating the photographs with the report required by this article.
 
 
 17
 In enacting section 11172, the legislature hoped to eliminate the unfairness to doctors who, on the one hand, must report suspected cases of child abuse or expose themselves to criminal and civil liability, and who, on the other hand, might be sued by angry parents who feel that the doctor's report of suspected child abuse unfairly implicates them.
 
 
 18
 The Wallis family asserts that, in light of the law as stated in James W. v. Superior Court, 21 Cal.Rptr.2d 169 (Ct.App.1993), the district court erred in its failure to vacate the dismissal of Spencer. Specifically, the family contends that the doctor's preexisting relationship with Lauren and Jessie Wallis eliminates the immunity granted under Penal Code section 11172.
 
 
 19
 The suggestion that a preexisting physician-patient relationship dissolves immunity is without support. The California Legislature has imposed a duty on every physician to report any sign or symptom that is consistent with child abuse. To allow a preexisting relationship to eradicate the immunity would frustrate the intent of the legislature since it is the treating physician who is in the best position to observe a finding consistent with child abuse.
 
 
 20
 The family's reliance on James W. for this proposition is misplaced. James W. does not eradicate the immunity granted to any treating physicians in reporting abuse. In fact, it acknowledges that if an immunized reporter of child abuse stays within his role of determining if there is evidence of abuse, then he is immunized from liability. Id. at 174. The case affects only a minute proportion of physicians who egregiously abuse their responsibilities, a situation not present here.
 
 
 21
 James W. did hold that the Penal Code immunities were inapplicable to foster parents and a subsequent treating therapist of an alleged victim, her brother and mother. Id. at 177-178. However, the facts of that case are a far cry from those in the instant case. In James W., therapist Kathleen Goodfriend allegedly attempted to coerce and intimidate her eight-year-old patient, Alicia W., into implicating the patient's father, James W., as the perpetrator of sexual abuse committed against the patient. This coercion was but one aspect of a two-year harassment campaign against the family. The factual basis for liability arising out of the post-molestation therapeutic relationship included Goodfriend's advice to the mother to treat the father as if he were dead, her accusing the mother in front of her son of participating in the rape, and telling the victim, without first obtaining consent, that the victim's mother was raped by her own father. Id. at 177.
 
 
 22
 Here, Dr. Spencer's relationship with the children preexisted the alleged molestation, whereas Goodfriend did not begin treating Alicia until after the child was abused. In addition, Spencer's actions in this case occurred in the immediate time frame of the report to Child Protective Services as opposed to the two years of action by Goodfriend. Most importantly, while Goodfriend harassed the family for two years, Spencer merely examined the children to determine if abuse had occurred and reported her findings.
 
 
 23
 At most, James W. precludes an immunity for actions taken to identify the perpetrator. Id. at 174. Since Spencer is being sued based on actions she took to determine if child abuse occurred, not to identify perpetrators, her immunity is not affected by the case.
 
 
 24
 The family contends further that, even if the panel finds that the initial report by Spencer on September 25, 1991 is immunized, Spencer's subsequent conduct, including her report to Wells Gardner dated October 6, 1991, was outside the scope of the original Mandated Reporter and was more than a mere republication of the original report as mandated by Penal Code section 11166 and immunized by Penal Code section 11172.
 
 
 25
 This contention is also without merit. Spencer's report to Gardner provided an analysis of the colposcopic photographs taken at Lauren's evidentiary examination and confirmed the oral findings Spencer had related to CPS in September. The memorandum to Gardner was arguably a continuation of the initial report mandated by law. However, even if it was not a continuation, Ferraro v. Chadwick, 270 Cal.Rptr. 79 (Ct.App.1990), holds that communications between doctors and law enforcement officials after the initial mandated report are "authorized" communications under the Child Abuse Reporting Law, and are thus entitled to the Law's immunity. Id. at 383-384.
 
 
 26
 The essence of this part of the family's argument is that Spencer lied about corroboration with another physician. This contention is unpersuasive. Spencer's report noted that Horowitz had corroborated in her findings. A comparison of the letters submitted to Gardner by the two doctors indicates that, at most, Spencer exaggerated the extent of Horowitz's concurrence in her report. Horowitz appears to have concurred in Spencer's catalog of symptoms but not necessarily in her assessment of those findings.
 
 
 27
 However, even if Spencer knowingly submitted a false report, immunity protection would still apply. Storch v. Silverman, 231 Cal.Rptr. 27, 33 (Ct.App.1986), held that the privilege is absolute:
 
 
 28
 We can conceive of a situation in which a medical practitioner maliciously and knowingly submits a false report of child abuse with the intent to vex, annoy and harass an innocent party. However, we feel confined by the legislative history of section 11172 to a result which grants total immunity to the mandated reporter.
 
 
 29
 Id. at 33. Thomas v. Chadwick, 274 Cal.Rptr. 128 (Ct.App.1990), also indicated that the immunity applied even if the defendant's act was intentionally false and malicious, noting that the legislature, in enacting the immunity, made a value choice that the greater good of protecting young victims required uncompensated injury would occasionally result to an adult. Id. at 138-39.
 
 
 30
 At the request of the Escondido Police Department, Dr. Spencer examined the Wallis children to determine whether abuse had occurred. As mandated by law, she reported her findings to Child Protective Services. These acts performed to identify abuse are immunized by California Penal Code section 11172. Thus, the district court was correct in denying the Wallis family's motion to reconsider the order granting Spencer's motion to dismiss.
 
 III
 
 31
 We reverse the district court's grant of summary judgment in favor of the City of Escondido and affirm its dismissal of Dr. Spencer from the suit.
 
 
 32
 AFFIRMED in part and REVERSED in part. Each party to bear its own costs.
 
 
 
 *
 The Honorable Bruce M. Van Sickle, Senior United States District Judge for the District of North Dakota, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3