[No. A086976. First Dist., Div. Four. Apr. 28, 2000.]

TOM EASTON et al., Plaintiffs and Appellants, v.
SUTTER COAST HOSPITAL et al., Defendants and Respondents.

## COUNSEL

Tom Easton, in pro. per., for Plaintiff and Appellants.

McNamara, Houston, Dodge, McClure & Ney, Thomas E. Pfalzer and Joseph J. Spataro for Defendants and Respondents Sutter Coast Hospital, Sutter Coast Home Care and Hospice and Don Moreau.

Nisson & Pincin and Timothy J. Nisson for Defendants and Respondents Del Norte Ambulance and Debbie Snow.

Schuering, Zimmerman & Scully and Anthony Lauria for Defendant and Respondent Sara Kossuth.

## OPINION

**POCHÉ, J.**—In this case we are called upon to construe the breadth of the immunity from civil liability conferred by Welfare and Institutions Code section 15634[1] both for those who report suspected elder abuse and those who facilitate access to the victims of suspected abuse. The section provides that "No . . . health practitioner . . . who reports a known or suspected instance of elder or dependent adult abuse shall be civilly or criminally liable for any report required or authorized by this article." (§ 15634, subd. (a).) The section goes on to provide that "Any . . . health practitioner, or employee of . . . a local law enforcement agency who, pursuant to a request

---

[1]Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

from an adult protective services agency or a local law enforcement agency, provides the requesting agency with access to the victim of a known or suspected instance of elder or dependent adult abuse shall not incur civil or criminal liability as a result of providing that access." (§ 15634, subd. (b).) We construe the section to create an absolute privilege in those individuals required to make such reports and for those specified individuals who provide access to the suspected victims of elder abuse.

The case arises from a judgment of dismissal entered against plaintiffs, husband and wife Tom and Elena Easton, when the demurrer of defendants, Sara Kossuth, M.D., Sutter Coast Hospital, Don Moreau, R.N., Sutter Coast Home Care and Hospice, Del Norte Ambulance and Debbie Snow, was sustained without leave to amend as to plaintiffs' second amended complaint.

## BACKGROUND

Because the case was resolved by demurrer we accept as true the factual allegations of plaintiffs' second amended complaint and set them out. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) On October 20, 1998, Margaretha Winchester, the 88-year-old mother of Tom Easton, was removed from the Easton home by two emergency medical technicians from Del Norte Ambulance, Debbie Snow and Doe 1. The ambulance attendants were escorted to the Easton home by county sheriff's deputies who had received a report from Sara Kossuth, a physician at Sutter Coast Hospital. Kossuth was acting on information she had received from Don Moreau, a nurse in the employ of Sutter Coast Home Care and Hospice, who had come to the Easton home on four previous occasions. About an hour before Winchester was removed from the home, Moreau had unsuccessfully attempted to persuade Tom Easton to take his mother to the hospital for treatment of a urinary tract infection, which had been diagnosed a week earlier.

Winchester remained a patient at Sutter Coast Hospital for three days. She died at the Eastons' home on November 1, 1998.[2]

The second amended complaint was brought in the name of both Eastons as Winchester's successors in interest. It alleges causes of action for trespass

---

[2]Easton filed a complaint on October 21, 1998, alleging inter alia: (1) violation of his civil rights under 42 United States Code section 1983 and the Fourth Amendment to the United States Constitution; (2) violation of his right to be secure in his home from the false imprisonment of his mother who refused treatment; and (3) intentional infliction of emotional distress upon him for the entry into his home and removal of his mother.

By his first amended complaint filed October 30, 1998, he sought damages for trespass, kidnapping and negligence.

and for false imprisonment against all defendants based upon the entry without plaintiffs' consent into their home by the paramedics who removed Winchester and took her to the hospital. As to both of those torts the complaint alleges intentional or negligent infliction of emotional distress. Finally, in two separately labeled causes of action, one against defendant Sutter Coast Hospital and the other against defendant Sutter Coast Home Care and Hospice, the complaint alleges negligent infliction of emotional distress based upon failure to train and supervise its employees and failure "to promulgate reasonable policies to minimize excessive suffering to patient['s] relatives."

In sustaining the demurrers of each of the named defendants the trial court concluded that "A fair reading of the Complaint is that Sheriff's deputies and ambulance crew came to the home of plaintiff and his now deceased mother on information that came from nurse Moreau that he believed plaintiff's decedent was being neglected as 'neglect' is defined by the Welfare and Institutions Code." (Former § 15610.57.)[3] The court then found that as a nurse Moreau is among those health practitioners who are mandated to report such incidents. Accordingly, it concluded that under section 15634 the defendants "are immunized from liability for their conduct."

## DISCUSSION

In reviewing a dismissal entered after the trial court has sustained a demurrer, we take the properly pleaded material allegations of the complaint to be true. Our only task is to determine whether the complaint states a cause of action. (*Snyder v. Michael's Stores, Inc.* (1997) 16 Cal.4th 991, 995 [68 Cal.Rptr.2d 476, 945 P.2d 781].) If a complaint on its face alleges facts amounting to an affirmative defense of absolute privilege a demurrer to it is properly sustained. (*Halvorsen v. Aramark Uniform Services, Inc.* (1998) 65 Cal.App.4th 1383, 1393, 1396 [77 Cal.Rptr.2d 383].)

The Elder Abuse and Dependent Adult Civil Protection Act (hereafter Act) codified at section 15600 et seq. represents the Legislature's response to the problem of unreported elder abuse which came to its attention in the early 1980's. (*People v. Heitzman* (1994) 9 Cal.4th 189, 201-203 [37 Cal.Rptr.2d 236, 886 P.2d 1229] [construing Pen. Code § 368, subd. (a), which imposes criminal sanctions for elder abuse]; *ARA Living Centers—*

---

[3]The version of the statute as of October 1998 provided in pertinent part: " 'Neglect' means the negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care which a reasonable person in a like position would exercise. Neglect includes, . . . [¶] . . . [¶] (b) Failure to provide medical care for physical and mental health needs." (§ 15610.57, added by Stats. 1994, ch. 594, § 3.)

*Pacific, Inc. v. Superior Court* (1993) 18 Cal.App.4th 1556, 1559 [23 Cal.Rptr.2d 224].) The statutory scheme set out in the Welfare and Institutions Code follows the statutory model for child abuse by mandating that health care providers report suspected elder abuse and immunizing from civil liability those who are required to make such reports. (*People v. Heitzman, supra,* at p. 202.)

The focus of the Act has always been to encourage reporting of abuse or neglect. (*Delaney v. Baker* (1999) 20 Cal.4th 23, 33 [82 Cal.Rptr.2d 610, 971 P.2d 986].) Under former section 15630, subd. (a), "Any elder or dependent adult care custodian, health practitioner . . . is a mandated reporter." (Added by Stats. 1994, ch. 594, § 7.) A "mandated reporter, who, in his or her professional capacity, or within the scope of his or her employment, has observed an incident that reasonably appears to be physical abuse, . . . or is told by an elder . . . that he or she has experienced . . . physical abuse shall report the known or suspected instance of abuse by telephone immediately or as soon as possible, and by written report sent within two working days. . . ." (Former § 15630, subd. (b), added by Stats. 1994, ch. 594, § 7.)

"Health practitioner" is defined to include physicians, licensed nurses, and "any emergency medical technician I or II" or paramedic. (Former § 15610.37, added by Stats. 1994, ch. 594, § 3.)

## A. *Immunity of Nurse and Physician for Report*

 Because both Moreau and Dr. Kossuth are health practitioners who are mandated reporters under the Act, they are within that group of health care providers immunized from civil liability "as a result of any report required or authorized by this article." The two questions before us are whether the privilege created is an absolute or a qualified privilege and, if it is an absolute privilege, whether it was vitiated by the manner in which the report was made.

Based upon the purpose of the immunity provision and upon the Legislature's drafting of section 15634, we conclude that the privilege created by the section is absolute rather than qualified. The language of section 15634 distinguishes between mandated reporters of abuse who make required or authorized reports and nonmandated reporters. As to those who must report, the rule is sweeping in its breadth—no health practitioner who reports shall be civilly liable for any report. However, the section goes on to create only

a qualified privilege for "[a]ny other person reporting." Such nonmandated reporters "shall not incur civil or criminal liability as a result of any report authorized by this article, unless it can be proven that a false report was made and the person knew that the report was false." (§ 15634, subd. (a).) The plain meaning of the statutory language is that for mandated reporters the truth or falsity of the report is of no moment—the privilege is absolute.

Our reading of the section is reinforced by the legislative history of the predecessor statutes, which created reporting requirements and immunity for mandated reporters of child abuse. As described in *Storch v. Silverman* (1986) 186 Cal.App.3d 671 [231 Cal.Rptr. 27], the child abuse reporting act originally created only a qualified privilege for mandated reporters until 1980 when the Legislature deleted the requirement that a mandated reporter's immunity from liability for a false report turned upon whether the reporter knew or should have known of the falsity of his report. (*Id.* at p. 679.) The court concluded that in the face of such clear legislative intent, Penal Code section 11172 creates an absolute privilege for mandated reporters of child abuse. (*Storch v. Silverman, supra,* at pp. 679-681.)

This amendment of the child abuse reporting privilege from a qualified to an absolute privilege for mandated reporters only reinforces our reading of the clear language of section 15634, which was enacted some five years after the changes made in the child abuse statute.

Having concluded that Moreau as a nurse is a mandated reporter whose report of elder abuse or neglect is absolutely privileged, the next question is whether Moreau's immunity is vitiated by his failure to comply with the reporting method described in section 15630. In essence plaintiffs argue that the report made was not a "report required or authorized" under section 15634 because Moreau did not *personally* telephone local law enforcement, but instead relayed his report of neglect through Dr. Kossuth. As a consequence they maintain Moreau should be denied immunity from liability. Similarly, plaintiffs contend that it was error to accord immunity to Dr. Kossuth who was not present (therefore she did not observe Winchester's condition in plaintiffs' home), but who made the report.

Plaintiffs rely upon the decision from this district in *Culbertson v. County of Santa Clara* (1968) 261 Cal.App.2d 274 [67 Cal.Rptr. 752]. In that case it was alleged that a deputy sheriff executed a superior court order for detention and mental health examination of the plaintiff without making personal service upon the detainee in violation of an express provision for such notice in the relevant statute. (*Id.* at p. 275.) The appellate court concluded that because the plaintiff's claim of false imprisonment alleged no service had

been made, the trial court erred in sustaining the county's demurrer as to the false imprisonment cause of action. (*Id.* at p. 276.) Based upon the holding in *Culbertson* plaintiffs argue that because Moreau, who observed Winchester, did not personally make the report, Moreau lost his immunity under the Act. The only relevance *Culbertson* has as plaintiffs seek to apply it to Moreau is for the general proposition that we should apply the language of a statute literally.

■ In construing a statute our primary goal is to effectuate the intent of the Legislature. (*Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1245 [82 Cal.Rptr.2d 85, 970 P.2d 872].) Even language plain on its face will not be read literally if to do so will frustrate the intent of the Legislature as revealed in the entire statutory scheme. (*Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1064-1065 [77 Cal.Rptr.2d 202, 959 P.2d 360].)

■ Accordingly, we reject a strict reading of the reporting condition— namely that reports be made by one who "has observed" a reportable incident—as inconsistent with either the letter or the spirit of the statutory scheme. The version of section 15630 in effect in October 1998 also permitted reports by one of several health care practitioners in instances "When two or more mandated reporters are present and jointly have knowledge or reasonably suspect" an instance of elder abuse. In that case a report could be made by a single member of the team. (Former § 15630, subd. (d), added by Stats. 1994, ch. 594, § 7.) To ensure, however, that a report would be made the statute goes on to state that "reporting duties under this section are individual, and no supervisor or administrator shall impede or inhibit the reporting duties, and no person making the report shall be subject to any sanction for making the report." (Former § 15630, subd. (f), added by Stats. 1994, ch. 594, § 7.) Finally, the section made failure to report a misdemeanor punishable by no more than six months in jail and a fine not to exceed $1,000. (Former § 15630, subd. (g), added by Stats. 1994, ch. 594, § 7.)

Moreau had an individual duty to make a report as soon as possible. (Former § 15630, subds. (b) & (f).) The focus of the statutory scheme is to encourage prompt reports so as to protect the victim of the suspected abuse. Here plaintiffs do not allege the suspected neglect was reported in a delayed fashion. Indeed, quite to the contrary, they allege Winchester's condition did not constitute a medical emergency requiring swift action.

Dr. Kossuth was not present at Winchester's bedside on October 20, though as a physician she is also a mandated reporter. What she knew had

been related to her by Moreau who was present at the bedside. Home visits by physicians being largely nothing but a fond if dusty memory nowadays, Dr. Kossuth did not personally observe Winchester's condition, but apparently relied upon the report of Moreau. While such reliance was not expressly envisioned by the statutory scheme in effect as of October 1998 the Legislature had in fact already taken action to amend the statute so that such reliance would be expressly permitted.

The month before the incident, in September of 1998, the Legislature passed and the Governor approved changes to former section 15630, which addressed this very problem. Former section 15630 was amended to provide that "Any mandated reporter" who "has observed *or has knowledge of* an incident that reasonably appears to be physical abuse . . . shall report" the abuse. (§ 15630, subd. (b)(1), as amended by Stats. 1998, ch. 980, § 1.)[4] This amended version of section 15630 did not take effect until January 1, 1999.

Clearly the purpose of the statutory scheme of which section 15630 is a part and the precise language of the 1998 version of the section, would not be advanced by denying immunity to either Moreau or Kossuth. Immunity from reporting suspected abuse is crucial to ensure compliance with the reporting obligation.[5] A legislatively identified rationale for the Act is the vulnerability and dependence of abused or neglected elders, especially those whose infirmities—mental or physical—leave them at the mercy of their caregivers and those who are physically isolated in their own homes or the homes of their relatives. (§ 15600, subd. (d).)

---

[4] *In light of our holding that Dr. Kossuth's report is immunized we need not reach plaintiffs'* additional claim that it was unlawful for her to make that report directly to law enforcement, and that she therefore could be liable if her report was reckless or made in bad faith. The version of former section 15630 in effect in October 1998 provided that if the abuse occurred any place other than in a long-term care facility or a state mental health hospital or state developmental center "the report shall be made to the adult protective services agency or the local law enforcement agency." (Former § 15630, subd. (b)(3), added by Stats. 1994, ch. 594, § 7.)

[5] Notwithstanding the existence of immunity for mandated reporters the Legislature has recognized that such "immunity does not eliminate the possibility that actions may be brought against those persons based upon required reports of abuse. In order to further limit the financial hardship that those persons may incur as a result of fulfilling their legal responsibilities, it is necessary that they not be unfairly burdened by legal fees incurred in defending those actions. Therefore, a care custodian, health practitioner, or an employee of an adult protective services agency or a local law enforcement agency may present a claim to the State Board of Control for reasonable attorneys' fees incurred in any action against that person on the basis of making a report required or authorized by this article if the court has dismissed the action upon a demurrer or motion for summary judgment made by that person, or if he or she prevails in the action." (§ 15634, subd. (c).)

## B. *Claims Based upon Removal of Patient*

 Plaintiffs raise claims of trespass, based upon the warrantless entry into their home by the sheriff's deputies and the paramedics, and of false imprisonment, based upon Winchester's removal to the hospital by the paramedics.[6]

 A trespass is committed by the wrongful entry onto land that is in the possession of another. (*Triscony v. Brandenstein* (1885) 66 Cal. 514, 516 [6 P. 384].) Plaintiffs alleged that they refused consent to entry by the officers or the paramedics.[7]

Having found that the privilege for a report by a mandated reporter is an absolute privilege, the second question we must resolve is the nature of the privilege as to the paramedics who removed Winchester from plaintiffs' home. The paramedics, or emergency medical technicians who came to the residence, are health practitioners within the meaning of the statutory scheme. (Former § 15610.37, added by Stats. 1994, ch. 594, § 3.) Any health practitioner who "pursuant to a request from an adult protective services agency or a local law enforcement agency, provides the requesting agency with access to the victim" of suspected abuse "shall not" incur civil liability as a result of providing that access. (§ 15634, subd. (b).)

The language of this portion of section 15634 is no less sweeping than that conferring immunity for reports by mandated reporters. Moreover, it would undercut the ultimate goal of the Act which was not simply for agencies to receive reports of suspected neglect but to permit those agencies to intervene "to protect the elder . . . correct the situation and ensure the individual's safety." (§ 15600, subd. (i).) That goal would not be served by withholding the absolute privilege from these paramedics who under no reading of the allegations of the complaint acted without direction either from Dr. Kossuth as relayed through the sheriff's deputies or from the deputies acting on the report of neglect made by Dr. Kossuth.

---

[6]As Winchester's successors in interest plaintiffs seek recovery on her behalf for her false imprisonment.

[7]An alternative rationale for permitting the entry of the officers without a warrant would be under the exigent circumstance exception to the warrant requirement. Here the exigency requiring immediate aid to the elder could be presumed as a matter of law based upon the report made under the Act. (*People v. Ray* (1999) 21 Cal.4th 464, 473 [88 Cal.Rptr.2d 1, 981 P.2d 928].)

Likewise we could conclude that a report under the Act would as a matter of law constitute an exigency sufficient to allow the unauthorized entry of the paramedics as reasonably necessary to prevent harm to Winchester. (Rest.2d Torts, § 197; *People v. Roberts* (1956) 47 Cal.2d 374, 377-378 [303 P.2d 721].)

Any claims plaintiffs sought to bring based upon the unconsented-to entry into their home to remove Winchester are absolutely barred under this provision.[8]

 The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief. (*City of Newport Beach v. Sasse* (1970) 9 Cal.App.3d 803, 810 [88 Cal.Rptr. 476].) Plaintiffs alleged that Winchester, who was apparently unable to speak, shook her head to indicate "no" when asked if she wanted to go to the hospital. We assume, as we must on demurrer, that Winchester was competent to decline to be admitted to the hospital.

What we do not assume is that her removal to the hospital was without lawful privilege. The Act permits a local law enforcement officer to take an endangered adult into temporary emergency protective custody when "no other option is available to mitigate the circumstances of that adult." (§ 15703, subd. (a).) Upon taking such an adult into custody the statute further provides that the adult "be transported to a hospital as soon as possible if medical evaluation and any necessary treatment is required." (§ 15703, subd. (b).) Such temporary emergency protective custody is limited to 72 hours. (§ 15703.1, subd. (a).)[9]

Plaintiffs have failed to allege facts establishing that the conduct of which they complain was not lawfully privileged—that is, Winchester's removal to the hospital by the paramedics at the direction of the deputies. Having failed to allege that her removal to the hospital (where their complaint alleges she was intubated and treated for three days) was unprivileged, they have failed to plead a cause of action for false imprisonment.

---

[8]The Act provides for an application for a search warrant for inspection of the premises in instances when a county welfare worker has been denied access to the premises and on a show of probable cause to believe that an elder on the premises is subject to abuse. (§ 15755.) In this incident, however, access was not denied—Moreau was admitted repeatedly into plaintiffs' home—and Moreau was not, in any event, a county welfare worker, but a nurse rendering home health services to Winchester.

[9]On appeal plaintiffs assert that there was no compliance with the temporary custody scheme, but factual allegations to support this assertion are utterly lacking in their second amended complaint. For example, only in their opening brief on appeal do they state that the Del Norte Adult Protective Services Agency phoned them a day or two after Winchester's removal, but made no home visit in violation of the provisions of section 15705, subdivision (a) for an investigation.

Accordingly, the court did not err in sustaining the demurrer of defendant paramedics Snow and Doe 1 as to plaintiffs' claims of trespass and false imprisonment.[10]

Insofar as plaintiffs' causes of action for trespass and for false imprisonment are barred by the absolute privileges of section 15634, plaintiffs' claims of negligent infliction of emotional distress based upon the conduct allegedly giving rise to such tort liability are likewise barred.

### C. *Ambulance, Hospital and Home Care Defendants*

On appeal plaintiffs fail to assert error and to support a claim of error with argument and legal authority as to the court's sustaining the demurrers of Sutter Coast Hospital, Sutter Coast Home Care and Hospice, or Del Norte Ambulance.

Plaintiffs plead in two causes of action that Sutter Coast Hospital and Sutter Coast Home Care and Hospice negligently inflicted emotional distress upon them by failing to train and supervise their employees or by promulgating policies to ensure that their employees not cause "excessive suffering" to relatives of patients.

Insofar as we find immunity for the acts of Moreau, Dr. Kossuth, and Snow and Doe 1, who are alleged by plaintiffs to be agents or employees of each of the codefendants Sutter Coast Hospital, Sutter Home Care and Hospice, and Del Norte Ambulance, no cause of action against those entities under a theory of respondeat superior can be based upon the absolutely privileged, even if negligent, conduct of the individual defendants. Nor do we find any other cause of action stated by the facts plead.

### DISPOSITION

The judgment of dismissal is affirmed.

Hanlon, P. J., and Reardon, J., concurred.

A petition for a rehearing was denied May 23, 2000, and appellants' petition for review by the Supreme Court was denied July 19, 2000.

---

[10]Plaintiffs argue generally that the deputies as well as the paramedics violated plaintiffs' Fourth Amendment rights by the unconsented-to entry into their home. Plaintiffs did not name the deputies as defendants, nor is their complaint framed as a constitutional as-applied challenge to the statute.