Filed 10/6/16  Doe v. City of Modesto CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SHEILA DOE, a Minor, etc., et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF MODESTO et al.,<br><br>Defendants and Respondents. | F071675<br><br>(Super. Ct. No. 2010602)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County.  Roger M. Beauchesne, Judge.

Alexander Law Group, Richard Alexander, Annie Wu; Law Office of David W. Scopp and David W. Scopp for Plaintiffs and Appellants.

Meyers, Nave, Riback, Silver & Wilson, Adam U. Lindgren and Blake P. Loebs for Defendants and Respondents.

-ooOoo-

Four-year-old plaintiff Sheila Doe lived with her 26-year-old mother Amanda Doe, who suffered from a bipolar disorder that she treated with Prozac.  An incident occurred, resulting in police taking Sheila into protective custody and leaving Amanda

alone in her home, where she was acting delusional. A short time later, a fire was reported at Amanda's home, and she later died as a result of the fire.

Plaintiff appeals from a judgment dismissing her wrongful death action for failing to plead sufficient facts to establish that police officers formed a special relationship with her or her mother and, thus, owed them a duty of due care.

On appeal, plaintiff has demonstrated an ability to amend her complaint to allege a special relationship (1) arising from representations made by the police to Amanda's sister and (2) creating to a duty to warn the sister that the police were leaving Amanda on her own. The sister had told police that Amanda struggled with a bipolar disorder that she treated with Prozac, and the police told the sister not to go talk Amanda down because the police would take her to behavioral health or to jail. Contrary to these representations, the police left Amanda alone and, shortly thereafter, she died as the result of a house fire that she probably set.

Pursuant to Code of Civil Procedure section 472c, which allows a plaintiff to present a proposed amendment for the first time on appeal, we conclude that plaintiff should be granted leave to amend because she has demonstrated her new allegations will cure the defects in her pleading. We conclude the new allegations contain the requisite particularity and do not contradict her earlier pleadings. In addition, the many statutory immunities asserted by the police officers do not extend to the duty to warn.

We therefore reverse the judgment of dismissal and remand for further proceedings.

## FACTS[1]

This wrongful death action was brought by Nicole Doe in her capacity as the guardian ad litem for Sheila Doe, a minor born in August 2009. Sheila is the daughter

---

[1] Taken from the first amended complaint, the allegations of which we are required to accept as true when reviewing an order sustaining a demurrer. (*E.g., Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604.)

2.

and sole heir of Amanda Doe, who died on June 22, 2013, as the result of a fire at her home. Nicole is Sheila's aunt and a sister of the deceased Amanda.

The defendants are the City of Modesto and three of its police officers, who were sued in their capacities as police officers for acts and omissions in the course and scope of their employment.

On Friday, June 21, 2013, at approximately 10:40 p.m., Amanda made a 911 call that was forwarded to the Modesto Police Department (MPD). She (1) stated her belief that police were outside her home; (2) used the term "SWAT team," and (3) said she was home with her four-year-old daughter, had tried to open the door to give her daughter to police, needed five minutes to dress her daughter and then the child would be outside. Amanda's only request for help was the 911 call; she did not call any family members.

At approximately 11:20 p.m., two uniformed police officers in a patrol car responded to the 911 call. When the officers arrived at the home, they found Sheila wandering in the street. Sheila pointed to her home and told the officers that her mother was sick inside the home and that she had been locked out. The officers placed Sheila in protective custody in their patrol car and a ride-along explorer scout supervised the child.

One of the officers saw a large amount of vomit outside the front door of the home, which confirmed Sheila's report of her mother's illness. Both officers entered the home and made a welfare inquiry by calling out. Amanda responded by moaning and calling back to the officers. The officers proceeded into the home based on their concern for the safety and health of Amanda.

Once inside the home, the officers found it in a total disarray, with food and toys scattered in the living room and the television tuned to a children's channel. The officers found Amanda standing in the bathroom area with a knife in her hand. Amanda was 26 years old, approximately five feet tall and about 110 pounds.

The officers ordered Amanda to drop the knife and then called for assistance and an ambulance. In response to the call for assistance, approximately 10 armed, uniformed

3.

police officers responded to Amanda's home with guns, bullet-proof vests and other protective gear. A sergeant took command and told Sheila's mother to drop the knife. The sergeant spent some, but not a lot, of time[2] talking with Amanda, who refused to leave the home peacefully. Retaining custody of Sheila, the sergeant and other police officers left Amanda to her own devices. The sergeant and officers did not advise family members that the MPD was leaving Amanda on her own.

The sergeant and officers had the benefit of crisis intervention training and did not follow crisis intervention protocols and procedures when they abandoned Amanda. They knew or should have known that, under the circumstances, it was necessary to continue talking to a delusional and mentally unstable mother until she was safe and no longer a risk to herself or others and to provide crisis intervention counseling services.

Less than one hour after MPD personnel left, Amanda, in a state of catastrophic mental distress and illness, was unable to escape from a fire in her home. The fire probably was started by Amanda in her delusional state. On Saturday, June 22, 2013, at 1:54 a.m. when fire safety personnel responded, the fire was substantially underway. Amanda was unconscious when fire safety officers carried her from the premises. She later died from acute smoke and chemical inhalation.

## PROCEEDINGS

In July 2014, Sheila filed a complaint for the wrongful death of her mother against the City of Modesto and three named police officers. In December 2014, Sheila filed a first amended complaint, which is the operative pleading in this appeal.

---

**2** Paragraph 20 of the first amended complaint states that the sergeant spent "only several minutes speaking with" her, while paragraph 21 states he left "after only a few minutes of talking to her." (See Black's Law Dict. (9th ed. 2009) p. 1498 ["several" means "more than one or two but not a lot"]; *California Statewide Communities Development Authority v. All Persons Interested etc.* (2007) 40 Cal.4th 788, 827, fn. 8 ["few" is defined as an indefinitely small number of persons or things] (dis. opn. of Chin, J.).)

4.

*Allegations of a Special Relationship*

Sheila alleged that a special relationship was created between the police officers and herself when the officer found her wandering in the street outside her home and placed her in protective custody in their patrol car under the supervision of an explorer scout who was riding along with them that night. Sheila alleged that the officers' conduct in taking her into their custodial care created a situation of dependency in that Sheila relied on the officers and the MPD to rescue her mother.

Sheila also alleged that defendants created a special relationship between themselves and Sheila *and her mother* based on the following circumstances: (1) The officer took care and custody of Sheila knowing that her mother (a) was in severe emotional distress, (b) was experiencing severe mental illness, (c) posed a risk of harm to herself, and (d) was in need of an ambulance and immediate medical attention, crisis intervention, or both; and (2) the officers proceeded into the home and determined Sheila's mother was not armed with a firearm, did not present any substantial risk to anyone other than herself. Sheila alleged the officers had a duty to exercise reasonable care and complete the rescue and assure the safety of Sheila and her mother, which included securing mental health crisis intervention services.

As to the existence of a special relationship based on increased risk, Sheila alleged that the conduct of the officers in abandoning her mother and taking Sheila away aggravated her mother's mental imbalance, increased the risk of harm to her mother, and left her mother in a worsened condition.

*Alleged Breaches of the Duty of Care*

Sheila's first amended complaint alleged particular breaches of the duty of care occurred when defendants (1) failed to follow police procedures in responding to a mentally ill young mother's plea for help to police via a 911 call; (2) failed to take reasonable steps to protect a delusional mother from harming herself; (3) failed to warn family members that the MPD was abandoning Amanda, which placed her in a position

5.

of foreseeable danger; and (4) failed to place Amanda in the care of a crisis intervention counselor.

*The Demurrer and Dismissal*

In January 2015, the defendants filed a demurrer on the grounds that the officers did not owe a duty to Sheila or her mother (i.e., there was no special relationship) and, in any event, defendants were immune from liability. Sheila opposed the demurrer.

In March 2015, the trial court issued a minute order (1) stating there had been no request for a hearing and (2) confirming its tentative ruling to sustain the demurrer without leave to amend. Later that month, the trial court filed a signed written order sustaining the demurrer without leave to amend. The order stated that Sheila had failed to state sufficient facts to establish a special relationship with the defendants that would create a duty of care. The order also stated that Sheila had not indicated how she would change her complaint to properly allege the necessary facts.

On May 1, 2015, the court entered a judgment in favor of defendants. Sheila filed a timely notice of appeal challenging the judgment and the underlying order sustaining the demurrer.

## DISCUSSION

I.  BASIC LEGAL PRINCIPLES

A.  Standards of Review for Demurrers

1.  *Stating a Cause of Action*

Appellate courts independently review the ruling on a general demurrer and make a de novo determination of whether the pleading "alleges facts sufficient to state a cause of action under any legal theory." (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) The demurrer is treated as admitting all material facts properly pleaded, but

6.

does not admit the truth of contentions, deductions or conclusions of law.[3] (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865 (*Dinuba*); see Code Civ. Proc., § 452 [pleading "must be liberally construed, with a view to substantial justice between the parties"].)

The principle that reviewing courts accept the truth of "all material facts properly pleaded" (*Dinuba*, *supra*, 41 Cal.4th at p. 865) leads us to the question of how one properly pleads the facts material to a negligence cause of action. The answer to this question in a lawsuit between private persons or entities is that negligence may be pleaded in general terms. (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795.) In contrast, in a lawsuit brought against a public entity or public employee under the Government Claims Act, a negligence cause of action must be pleaded with particularity. (*Lopez v. Southern Cal. Rapid Transit Dist.*, *supra,* at p. 795.)

Based on the rule of pleading with particularity, we conclude that Sheila is required to plead specific facts to establish the existence of a duty owed by the MPD or the officers. Consequently, as Sheila's theory about the existence of a duty is based on California's special relationship doctrine, she must plead with particularity the facts establishing that the defendants had a special relationship with her or her mother.

### 2. Leave to Amend

When a demurrer is properly sustained on the ground that the complaint fails to state facts sufficient to constitute a cause of action, and leave to amend is denied, "we decide whether there is a reasonable possibility that the defect can be cured by amendment." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) If it can be cured, we

---

[3] The pleader's contentions or conclusions of law are not controlling because appellate courts must independently decide questions of law without deference to the legal conclusions of either the pleader or the trial court. (*Villery v. Department of Corrections and Rehabilitation* (2016) 246 Cal.App.4th 407, 413.) Legal questions that arise at the pleading stage include the interpretation of a statute or the application of a statutory provision to facts assumed to be true for purposes of the demurrer. (*Ibid.*)

reverse; if not, we affirm. (*Ibid.*) The burden of demonstrating such reasonable possibility is squarely on the plaintiff. (*Ibid.*)

Contrary to the general rule that an argument cannot be raised for the first time on appeal, the Legislature has decreed that a plaintiff may demonstrate a reasonable possibility of amending a defective complaint even when the proffered amendment was not presented to the trial court. (Code Civ. Proc., § 472c, subd. (a).)[4] Indeed, our Supreme Court has stated that "[t]he issue of leave to amend is always open on appeal, *even if not raised by the plaintiff.*" (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746, italics added.) Thus, an appellate court "may consider new theories on appeal from the sustaining of a demurrer." (*Simpson v. The Kroger Corp.* (2013) 219 Cal.App.4th 1352, 1367.) This principle is relevant to the present appeal because Sheila has now suggested an amendment that was not presented to the trial court.

In response to Sheila's suggested amendment, defendants contend that amendments first proposed on appeal are subject to limitations and one such limitation applies in this case. Specifically, defendants argue that Sheila's proposed amendment contradicts allegations in her first amended complaint and, thus, should not be allowed because she has not presented evidence clearly showing that the earlier pleading was the result of mistake or inadvertence. (*American Advertising & Sales Co. v. Mid-Western Transport* (1984) 152 Cal.App.3d 875, 879; see 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 1198, p. 630.) We conclude that defendants have accurately identified a requirement that Sheila's proposed amendment must satisfy. Therefore, in part II.B, *post*, we consider whether her proposal contradicts her earlier pleadings.

---

[4] The statutory text provides: "When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made." (Code Civ. Proc., § 472c, subd. (a).)

8.

B. Special Relationship Doctrine

As a general rule, law enforcement officers do not owe a duty of care to protect members of the general public. (*Williams v. State of California* (1983) 34 Cal.3d 18, 24 (*Williams*).) Therefore, law enforcement officers have no duty to come to the aid of another unless the officers have created a peril or a special relationship exists. (*Greyhound Lines, Inc. v. Department of California Highway Patrol* (2013) 213 Cal.App.4th 1129, 1136 (*Greyhound*).) In other words, a special relationship can be the source of a duty. (See *Stout v. City of Porterville* (1983) 148 Cal.App.3d 937, 944 [officer owed no duty to take intoxicated plaintiff into custody; "no allegations of the requisite factors to a finding of special relationship"].)

### 1. Two Ways to Create a Special Relationship

In this appeal, the parties agree that a special relationship between a law enforcement officer and a member of the public can be formed in two narrow circumstances. First, a special relationship is created where the officer makes a representation (express or implied) that is detrimentally relied upon and causes a foreseeable harm. (E.g., *Morgan v. County of Yuba* (1964) 230 Cal.App.2d 938 [county held liable where no warning was given after a deputy sheriff promised to warn decedent if a prisoner, who had threatened her life, was released].) Second, a special relationship is created where the officer engages in an affirmative act that increases the foreseeable risk of harm to the individual. (E.g., *McCorkle v. City of Los Angeles* (1969) 70 Cal.2d 252 [officer investigating accident directed plaintiff to follow him to the middle of the intersection where plaintiff was hit by a car].)

When the California Supreme Court articulated the special relationship doctrine in *Williams*, it cited section 323 of the Restatement Second of Torts, which provides in full:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other

9.

for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

> "(a) his failure to exercise such care increases the risk of such harm, or

> "(b) the harm is suffered because of the other's reliance upon the undertaking."

Thus, California case law and the Restatement demonstrate that there are two ways a special relationship can be created between law enforcement personnel and a member of the public.

### 2. Pleading Detrimental Reliance

Detrimental reliance can arise from the express or implied representations of a law enforcement officer. (*Morgan v. County of Yuba*, *supra*, 230 Cal.App.2d 938.) Also, our Supreme Court has "specifically recognized that a duty of care may arise when the conduct of a patrolman in a situation of dependency results in detrimental reliance on him for protection." (*Clemente v. State of California* (1985) 40 Cal.3d 202, 213.) These principles and the rule of pleading with particularity lead us to conclude that Sheila must plead the specific express or implied representations relied upon or, alternatively, the specific conduct of the officer and the facts creating the situation of dependency that resulted in detrimental reliance on the officer.

Next, we consider what facts must be pled to show detrimental reliance actually resulted from the defendant's representations or the situation of dependency. The question about the specific facts needed to properly allege a person has detrimentally relied on the actions of another was addressed by this court in *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079. There, we concluded the plaintiff failed to demonstrate that he could amend to allege detrimental reliance with the requisite specificity because he did not identify "the action he took or did not take because of his reliance on [the defendant's wrongful conduct]." (*Id*. at p. 1091.) Based on the principles stated in *Glaski*, we conclude that to plead detrimental reliance with the required specificity a

10.

plaintiff must identify (1) the particular actions done, or actions not done, in response to the defendant's representations or conduct; (2) the particular individual who acted, or did not act, in reliance on the defendant's representations or conduct; and (3) how that action or inaction resulted in a detriment. These pleading requirements are applied to Sheila's allegations about detrimental reliance in part II.A, *post*.

C.    Immunity

A plaintiff who has adequately pled specific facts showing that the defendant law enforcement officers breached a duty arising out a special relationship still might lose at the pleading stage if the law enforcement officers are able to show the alleged acts or omissions were protected by one or more of California's immunity statutes. (*Easton v. Sutter Coast Hosp.* (2000) 80 Cal.App.4th 485, 490 [demurrer is properly sustained when complaint alleges facts that establish an affirmative defense of immunity]; see *Bearman v. California Medical Bd.* (2009) 176 Cal.App.4th 1588, 1593 [demurrer may be based on defendant's absolute or qualified immunity].)

The California Supreme Court has encouraged lower courts to address the question of duty before deciding whether an immunity applies. (*Williams*, *supra*, 34 Cal.3d at pp. 22-23.)[5] Based on *Williams*, this court usually considers whether the law enforcement officers owed a duty of care first and then address whether a statutory immunity protects the officers from liability for breaching that duty. (*Greyhound*, *supra*, 213 Cal.App.4th at pp. 1136-1137.)

In the present case, the defendants' demurrer asserted immunities under nine separate sections of the Government Code. The immunities related to discretionary acts

---

[5]    By way of comparison, we note that the United States Supreme Court once required federal trial courts to decide whether a constitutional violation had occurred before deciding the immunity question. (*Saucier v. Katz* (2001) 533 U.S. 194, 201.) However, the high court has changed its approach and now allows trial courts to decide the immunity question before (or without) determining whether there was a constitutional violation. (*Pearson v. Callahan* (2009) 555 U.S. 223, 236.)

(Gov. Code, § 820.2), the execution or enforcement of laws (Gov. Code, § 820.4), acts or omissions of others (Gov. Code, § 820.8), the institution of court proceedings (Gov. Code, § 821.6), the failure to provide police protection (Gov. Code, § 845), the failure to make an arrest (Gov. Code, § 846), the failure to make a mental examination (Gov. Code, § 855.6), the failure to diagnose mental illness (Gov. Code, § 855.8), and the failure to confine a person for mental illness (Gov. Code, § 856).

II.     ANALYSIS OF PLEADINGS AND PROPOSED AMENDMENT

         A.     Adequacy of the First Amended Complaint

                1.     *Evolution of Sheila's Theory*

During the development of this case in the trial court and on appeal, Sheila came to realize that the way to state a valid negligence cause of action and avoid the crazy quilt of statutory immunities patched together by the defendants was to allege a special relationship under a detrimental reliance theory that gave rise to a duty to warn.  For instance, Sheila's reply brief asserts that "there is a special relationship based duty to warn because [defendants] increased the risk of suicide by providing Amanda's sister, Nicole, assurances and instructions not to interfere before unexpectedly abandoning Amanda in a suicidal state without warning."  Consequently, our first inquiry is whether this theory about a special relationship creating a duty to warn was alleged with sufficient particularity in the first amended complaint.

                2.     *First Amended Complaint Allegations*

The first amended complaint alleges the police officers abandoned Amanda without warning family members and, as a direct result of the failure to warn, family members were effectively precluded from rescuing Amanda.  The first amended complaint, however, does not allege a particular police officer made express or implied representations to a particular family member, who relied on those representations by forgoing an attempt at aiding Amanda.  In addition, the first amended complaint does not

12.

describe the statements constituting an express representation or the conduct and circumstances that created an implied representation. Therefore, we conclude that the theory asserted in Sheila's appellate brief was not alleged with sufficient particularity in the first amended complaint. Its allegations of fact do not show (1) a special relationship was established by express or implied representations, (2) the special relationship induced detrimental reliance by a particular family member, and (3) the special relationship created a duty to warn a particular person or persons that the police were withdrawing their assistance.

In addition, the first amended complaint attempted to allege a special relationship arose out of a situation of dependency, which was created when the police officers took Sheila into their custodial care. It also alleged Sheila relied on the officers to rescue her mother. This allegation of reliance lacks the requisite particularity because it does not state what the four-year-old Sheila did or did not do as a result of her reliance on the officer and how those acts or omissions by Sheila would have avoided the detriment of her mother's death. Therefore, we conclude Sheila has not alleged sufficient facts to show a special relationship was established as the result of a dependency relationship or how detriment arose as a result of Sheila's reliance on the officers.

### 3. Proposed Amendment

Anticipating the shortcomings of her first amended complaint, Sheila's reply brief states: "Should this court conclude that the [first amended complaint] lacks sufficient particularity to survive demurrer, Sheila proposes an amendment pursuant to [Code of Civil Procedure] section 472c with the details of what actually occurred: Officer Heilman instructed Nicole not to go talk Amanda down and assured [Nicole] that they would take Amanda into custody, despite Nicole telling him about Amanda's struggle with bipolar disorder, which she treated with Prozac." Accordingly, we turn the question of whether Sheila should be granted leave to amend.

13.

B.    The Proposed Amendment Does Not Contradict Earlier Allegations

1.    *Contradictions Claimed by Defendants*

Defendants contend that Sheila's new theory that a special relationship arose because of representations and directions given by Officer Heilman to Nicole is based on facts that contradict the first amended complaint. In defendants' view, the first amended complaint "is premised on the Officers' complete failure to communicate with Amanda's family members—not the Officer's failure to keep promises to them."

The specific language from the first amended complaint that defendants contend contradicts the new theory was set forth paragraphs 11, 28 and 30 of the first amended complaint. In those paragraphs, Sheila alleged that (1) "[i]nstead of notifying … Sheila's family members … Defendants … undertook the duty to protect and rescue [Sheila and her mother]"; (2) defendants breached their duty of care by "failing to warn and advise family members that the MPD was abandoning [Sheila's] mother to her own devices"; and (3) "Defendants' failure to warn [Sheila] and family members of [her mother's] plea for help and obvious suicidal tendencies after they abandoned their rescue … effectively precluded family members and others from rescuing [Sheila's mother], placing [Sheila's mother] and Sheila in a position of clearly foreseeable danger, which lead to [Sheila's mother's] demise."

2.    *Sheila's Description of the New Allegations*

In response to defendants' argument that the new allegations would be contradictory, Sheila's reply brief states that appellate counsel interviewed Nicole about the details of the night Sheila lost her mother and, as a result, would be able to specifically allege the following:

> "On the night of the incident, a Child Protective Care social worker called Nicole and instructed her to go and get Sheila from respondents' police station. While there, Nicole informed Officer Heilman of [Sheila's mother's] struggle with bipolar disorder, which she treated with Prozac. Nicole then asked whether she could go to [Sheila's mother's] home to talk her down. Officer Heilman instructed her not to go and assured her that

14.

Modesto police officers would either take [Sheila's mother] to behavioral health or to jail. He never once told her that they would leave, or had left, [Sheila's mother] alone. Nicole therefore believed that respondent officers were still with her sister."

Sheila contends that these additional details about what happened are consistent with the pleaded facts and, therefore, she has demonstrated an ability to cure the lack of particularity by amendment.

### 3. *Comparison of New Allegations to Prior Allegations*

A contradiction exists when two statements cannot be reconciled. (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 395.) For example, there is a contradiction (i.e., a direct conflict) between a plaintiff's testimony that no force was used and his statement that unnecessary force was used because both statements cannot be true. (*King v. Andersen* (1966) 242 Cal.App.2d 606, 610.)

Here, the new allegations proposed by Sheila do not contradict the allegation in paragraph 11 of the first amended complaint that defendants, instead of notifying Sheila's family members *of her mother's plea for help*, undertook a duty to protect and rescue Sheila and her mother. Sheila's new allegations state that Nicole was contacted by a social worker and instructed to go to the police station to pick up Sheila; at the station she was instructed by Officer Heilman not to attempt to talk Amanda down and that the police would take care of Amanda. Thus, the new allegations do not directly conflict with the statement that defendants did not notify a family member.

In addition, the new allegations do not contradict the allegation in paragraph 28 that defendants failed "to warn and advise family members that the MPD was abandoning [Sheila's] mother to her own devices." Instead, the new allegations are consistent with the failure to warn family members, including Nicole, about the decision to abandon Sheila's mother.

Similarly, the new allegations do not contradict the allegation in paragraph 30 that defendants failed to "warn [Shelia] and family members of [Sheila's mother's] plea for

15.

help and obvious suicidal tendencies *after they abandoned their rescue*."  (Italics added.)  The italicized prepositional phrase in the quoted allegation identifies when the alleged failure to warn occurred and this allegation about timing is consistent with the new allegations about the lack of a warning that have been proposed by Sheila.

In summary, we conclude that the new allegations that Sheila proposes to make by amendment do not contradict her earlier pleadings.

### C.    Pleading a Foreseeable Peril

#### 1.    *Contentions of the Parties*

Defendants contend that to sufficiently allege a special relationship, a plaintiff must allege a promise or representation, detrimental reliance, and the creation of a foreseeable peril.  They further contend that Sheila's proposed amendment is defective because it was not foreseeable that Sheila's mother would set her house on fire and be unable to escape.  Defendants argue that foreseeability exists only when there is a specific threat of harm and Amanda made no specific threat.

Sheila's first amended complaint alleged:  "It was foreseeable that abandoning a young mother under these circumstances would have an adverse result, including the death of Sheila's mother."  It also alleged that, as a direct result of defendants' failure to warn family members, defendants placed Sheila and her mother "in a position of clearly foreseeable danger, which lead to [the mother's] demise and Sheila without a mother."  Based on these and other allegations, Sheila contends she expressly pleaded that defendants induced foreseeable detrimental reliance by failing to warn that they abandoned her mother—a failure that precluded intervention by family members.

#### 2.    *Applicable Rule of Law*

Defendants' view of the law regarding pleading a foreseeable peril is not accurate.  A duty of care under the special relationship doctrine "may arise where a person makes a specific threat against a specific person or *otherwise presents a foreseeable danger to a*

16.

*readily identifiable potential victim.*" (*Thompson v. Sacramento City Unified School Dist.* (2003) 107 Cal.App.4th 1352, 1369, italics added.) In other words, a specific threat made against a specific person (such as a threat of suicide) is one, but not the only, way to establish the foreseeability of both the danger and the victim.

### 3. Sufficiency of the Proposed Amended Pleading

Here, Sheila does not contend that she can amend to allege that her mother made a specific threat to harm herself. Consequently, the question presented is whether Sheila is able to allege facts otherwise showing that her mother presented a foreseeable danger to herself.

Sheila states she can amend her pleading to allege that "Nicole informed Officer Heilman of Amanda's struggle with bipolar disorder, which she treated with Prozac. Nicole then asked whether she could go to Amanda's home to talk her down. Officer Heilman instructed her not to go and assured her that Modesto police officers would either take Amanda to behavioral health or to jail."

We conclude that these specific factual allegations are sufficient to adequately support the general allegation of foreseeability contained in the first amended complaint. Nicole's statement that Amanda struggled with a bipolar disorder and treated that disorder with Prozac supports the inference that Amanda was or might be a danger to herself.[6] This inference was strengthened by Nicole's inquiry about whether she should go talk Amanda down. One reason to talk down a bipolar, Prozac-using person who has shown signs of physical illness (viz., vomiting) and made a delusional 911 call is to prevent that person from inflicting injuries on herself. The inference that Amanda

---

[6] The link between Prozac use and suicide attempts has been discussed in the popular press as early as the March 26, 1990, issue of Newsweek, which included a cover story entitled "The Promise of Prozac." (Note, *The Rise and Fall of Prozac: Products Liability Cases and "The Prozac Defense" in Criminal Litigation* (1993) 12 St. Louis U. Pub. L.Rev. 525.)

17.

presented a foreseeable danger to herself is strengthened further by the officer's response to Nicole. He stated that the police would take Amanda to behavioral health or to jail. This statement reasonably implies that the officer did in fact foresee that Sheila was a danger to herself and needed some type of supervision to prevent her from harming herself.

Therefore, we conclude that Sheila has established an ability to amend her pleading to allege specific facts sufficient to establish a special relationship creating a duty to warn Nicole that the police were withdrawing their assistance – the new theory that Sheila has presented on appeal. Sheila's existing and proposed allegations are sufficient to show that (1) it was foreseeable that Amanda posed a peril to herself,[7] (2) Officer Heilman expressly represented to Nicole that the police would take Amanda to behavioral health or to jail, (3) Nicole relied on this representation by forgoing an attempt to go to the aid of Amanda, and (4) Nicole's reliance was detrimental in that the death of Amanda would have been prevented if Nicole had gone to her aid.

III.  IMMUNITY

Defendants argue that, even assuming a special relationship could be pled with sufficient particularity, this court still should affirm the judgment of dismissal because defendants are immune from liability under several provisions of the Government Claims Act. Defendants' demurrer asserted immunities under nine separate sections of the

---

[7]  In *Lawman v. City and County of San Francisco* (N.D.Cal. 2016) 159 F.Supp.3d 1130, the district court granted summary judgment to the defendants, concluding there was no duty of care because the element of a foreseeable risk of harm was missing. The court stated that "there are no facts to indicate that Lawman was in medical crisis at the time of his arrest that created a foreseeable risk of harm upon his release." (*Id*. at p. 1154.) The court also considered Lawman's behavior at the jail, which was observed by nurses and deputies. (*Ibid*.) The present case is procedurally and factually distinguishable. Here, we are considering the pleadings and Sheila's ability to amend, not a motion for summary judgment. Also, the facts alleged are sufficient to show that Amanda was in a medical crisis that created a foreseeable risk that she would be harmed.

Government Code. (See Gov. Code, §§ 820.2 [discretionary act], 820.4 [enforcement of laws], 820.8 [acts or omissions of others], 821.6 [institution of court proceedings], 845 [failure to provide police protection], 846 [failure to make an arrest], 855.6 [failure to make a mental examination], 855.8 [failure to diagnose mental illness], 856 [failure to confine a person for mental illness].)

These statutory immunities cover a wide range of acts and omissions by public employees, but do not protect against liability for breaching a duty to warn a family member that a person who poses a danger to herself is being released from the custody of law enforcement officers. (*Johnson v. County of Los Angeles* (1983) 143 Cal.App.3d 298, 312 [sheriff's officers were not immune from liability for failing to warn a wife of the impending release of her schizophrenic husband, who promptly committed suicide].) Therefore, we conclude that the bar to liability created by immunity does not extend to the duty to warn and, therefore, does not provide a ground for denying Sheila leave to amend her complaint.

## DISPOSITION

The judgment of dismissal is reversed. The trial court is directed to vacate its order sustaining the demurrer without leave to amend and to enter a new order sustaining the demurrer with leave to amend. Plaintiff shall recover her costs on appeal.

_____
FRANSON, J.

WE CONCUR:

_____
HILL, P.J.

_____
MCCABE, J.[*]

_____

[*]      Judge of the Superior Court of Merced County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19.