Filed 1/11/23  Modified and Certified for Pub. 2/9/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| LYNDA VALERO,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SPREAD YOUR WINGS, LLC et al.,<br><br>    Defendants and Respondents. | H049119<br>(Santa Clara County Super. Ct.<br>No. 18CV338394) |

Plaintiff and appellant Lynda Valero appeals from a judgment of dismissal after the trial court sustained a demurrer to her first amended complaint in favor of defendants and respondents Sabrina Dellard, Spread Your Wings, LLC, and Spread Your Wings, Inc.[1] The pleading, in a single cause of action for malicious prosecution, alleged that Dellard was a care custodian, employed by Spread Your Wings, and that she provided in-home services to a dependent adult, Michael Barton. Valero also provided such services to Barton, and the two caregivers worked different shifts in his home. Valero alleged that Dellard, a mandatory reporter under the elder-abuse laws, made a knowingly

---

[1] For ease, and except where context dictates otherwise, we refer to these two entities collectively as Spread Your Wings.

false report to law enforcement that she had seen Valero try to kill Barton by smothering him with a pillow. Dellard is further alleged to have later coerced Barton to confirm the false report about Valero having tried to smother him. Valero was arrested and charged with attempted murder, and spent some 28 days in custody, unable to post bail. Ultimately, as alleged, evidence surfaced that revealed the reports about Valero having tried to kill Barton to be untrue, and the criminal charges against her were dismissed.

Valero sued Dellard and Spread Your Wings, as Dellard's alleged employer, for malicious prosecution. The cause of action was factually based on both Dellard's allegedly false report of Valero's abuse of Barton as a dependent adult, and Dellard's later alleged coercion of Barton to corroborate the false report. These defendants ultimately demurred to the first amended complaint, asserting statutory immunity under Welfare and Institutions Code section 15634, subdivision (a) (section 15634(a)), which provides absolute immunity from civil and criminal liability to mandatory reporters under the Elder Abuse and Dependent Adult Civil Protection Act (the Act; Welf. & Inst. Code, § 15600 et seq.).[2]

Rejecting Valero's attempts to exclude intentionally false reports from the absolute immunity afforded to mandatory reporters under section 15643(a), the trial court sustained respondents' demurrer without leave to amend. Judgment of dismissal for respondents followed.

On appeal, Valero reprises her claim that a mandatory reporter of elder or dependent-adult abuse does not enjoy immunity from civil liability for a fabricated and knowingly false report of abuse. She contends that absolute immunity under section 15634(a) protects only reports by mandatory reporters

---

[2] Further unspecified statutory references are to the Welfare and Institutions Code.

that the reporter has observed, or of which the reporter has knowledge, or which have been communicated to the reporter by the elder or dependent adult (§ 15630, subd. (b)(1) [duties of mandatory reporters]), and that these descriptors limit the absolute immunity of mandated reporters to "known or suspected" incidents of abuse (§ 15634(a)) and exclude knowingly false reports from protection.

We conclude that the clear legislative aim of absolute immunity in section 15634(a) for mandated reporters was to serve and facilitate the policy goals of the Act—by increasing the reporting of elder abuse and minimizing the chilling disincentives to that reporting, including the fear of getting sued. We further conclude that the carve-out to immunity for a knowingly false report by a mandated reporter as urged by Valero is not dictated by the statutory language of the Act as a whole and is counter to these legislative policy goals, which are not ours to undo or undermine. Finally, we reject Valero's effort to couch Dellard's alleged post-reporting coercion of Barton as later conduct outside the broad contours of immunity for acts of reporting. We accordingly affirm the judgment of dismissal.

STATEMENT OF THE CASE

I.     *Valero's First Amended Complaint[3]*

The first amended complaint alleged a single cause of action for malicious prosecution. As relevant to our inquiry, it alleges that Valero "worked for the Stanislaus County Department of In-Home Supportive Services . . . and was selected by Defendant Michael Barton to provide in-home care for him.

---

[3] Dellard and Spread Your Wings moved for judgment on the pleadings with respect to the original complaint on the same basis of statutory immunity. Their motion was granted with leave to amend, resulting in the first amended complaint, which added more factual detail and legal conclusions but consisted of the same essential cause of action.

Mr. Barton needed care due to physical disabilities and limited mental capacity." Defendants Spread Your Wings, LLC and Spread Your Wings, Inc. are alleged to be California entities owned and operated by defendant Andrew Serry Dumbuya, and there is alleged a unity of interest between him and these companies for purposes of alter ego liability.[4] In October 2017, Spread Your Wings was "hired to provide additional in-home care for . . . Barton. Spread Your Wings' employee, Defendant Sabrina Dellard, provided this care, staying with Mr. Barton in his home overnight, while [Valero] would provide care for Mr. Barton mornings, afternoons[,] and evenings, except for Thursdays, when [Valero] would finish her shift at 2:00 p.m."

According to the pleading, "During the time period [in which Valero] and Dellard both provided care for Mr. Barton, their personal and professional relationship deteriorated and became contentious. [Valero] is informed and believes … that Dellard developed a strong dislike for [Valero]."

On "January 11, 2018, shortly after 2:00 p.m., [Valero] finished her shift at Mr. Barton's residence. After [Valero] had left the premises, . . . Dellard arrived late for her shift, which was supposed to start at 2:00 p.m. Ms. Dellard,

---

[4] Defendant Andrew Serry Dumbuya did not join the demurrer to the first amended complaint filed by Spread Your Wings and Dellard. And the trial court's order sustaining the demurrer did not make a ruling in his favor. Yet, the judgment of dismissal (signed by a different judicial officer than the order sustaining the demurrer of Spread Your Wings and Dellard) refers to him as having successfully demurred and therefore being entitled, like Spread Your Wings and Dellard, to a judgment of dismissal. The judgment was approved as to form by Valero's counsel. No party addresses this issue in their appellate briefing. Thus, as it stands, judgment appears to have been entered in favor of defendant Dumbuya based on a successful demurrer that he never filed. Of course, because Dumbuya's liability is derived only from agency or alter ego allegations as against Spread Your Wings, his entitlement to a judgment is necessarily established by our affirmance of the judgment in favor of Spread Your Wings.

4

without any information, evidence or suspicion that Mr. Barton had been the victim of abuse, called law enforcement and falsely reported that she [had] witnessed [Valero] attempting to smother Mr. Barton to death with a pillow when she arrived at Mr. Barton's residence to start her shift. Ms. Dellard's statements to the police were untrue. Indeed, Ms. Dellard never observed any interaction between [Valero] and Barton that day because when she arrived at Barton's residence, [Valero] was no longer there. *Ms. Dellard's report to law enforcement was not a report of any instance of actual, known, communicated, or suspected abuse, but a fabrication from whole cloth of a scenario created in Ms. Dellard's imagination, maliciously, and with the sole purpose of having [Valero] arrested and prosecuted for a serious felony*. Therefore, Ms. Dellard's report is not subject to any immunity conferred on mandated reporters. (. . . § 15630, subd. (b).)" (Italics added.)

"After making the fabricated report to law enforcement, Ms. Dellard took advantage of Barton's limited mental capacity and physical disabilities by influencing, intimidating, and coercing him into falsely confirming to law enforcement the fabricated report that Dellard had made, namely that [Valero] [had] attempted to smother Mr. Barton with a pillow. Mr. Barton would not have made this false report in the absence of the coercion and influence of Ms. Dellard. *Ms. Dellard's actions in influencing and coercing Mr. Barton to falsely identify* [Valero] *as the perpetrator of an attempted murder were not done as part of any reporting obligations, but instead as a 'private citizen*[] [*who became*] *deeply enmeshed in investigatory or prosecutorial activities and* [*took*] *on functions of the police.'* (*James W. v. Superior Court* (1993) 17 Cal.App.4th 246, 257 [(*James W.*)].) As such, Ms. Dellard's coercion of Mr. Barton following Dellard's report to law enforcement [is] not subject to any immunities conferred on mandated reporters." (Italics added.)

5

"Based on the false report by Dellard and the coerced false report of Barton, the police arrested [Valero], and the Stanislaus County District Attorney's Office charged and prosecuted [her for] attempted murder. The report of either Dellard or Barton, standing alone, would have been sufficient to move the authorities to arrest and prosecute [Valero]. [Valero] was incarcerated for approximately 28 days, during which time [she] did not have the means to post bail. Evidence proving [Valero]'s innocence came to light, resulting in her release from jail and the dismissal of all charges against her. This evidence also conclusively establishes that the statements made by Dellard and Barton in order to have [Valero] arrested and criminally charged were unequivocally false."

"[Valero] suffered, and will likely continue to suffer for the rest of her life, tremendous physical, mental, emotional, and economic injuries and damages due to the prolonged incarceration for a very serious crime that Dellard and Barton falsely accused her of committing. [¶] . . . [¶] In doing the things here alleged, Dellard and Barton were actively involved in causing [Valero] to be arrested, charged, and prosecuted with the crime of attempted murder. [¶] The charges were all dropped as soon as evidence surfaced showing that [Valero] was innocent of all charges and that Dellard and Barton [had] made deliberately false allegations to the police and/or prosecuting authorities. [¶] Dellard and Barton made the false report with malice and for the sole purpose of having [Valero] arrested and prosecuted for a crime she did not commit. [¶] The actions of Dellard and Barton were malicious in that they intended to cause harm to [Valero], or were done in a despicable manner and with willful and reckless disregard for [Valero]'s rights and safety. [Valero] is

therefore entitled to an award of exemplary damages against Dellard and Barton, in an amount to punish and deter this behavior."[5]

The pleading goes on to allege that Spread Your Wings "and/or Dumbuya knew of the unfitness of . . . Dellard and the risk she posed to [Valero] prior to Ms. Dellard's false allegations against [Valero]. Nonetheless, despite knowledge of the potential harm Dellard posed to [Valero], these defendants failed to take any action to avoid harm to [Valero], by, among other things, training, supervising, reprimanding, and/or terminating Dellard. As such, these defendants are liable for compensatory damages, as well as exemplary damages pursuant to Civil Code section 3294, subdivision (b), in an amount sufficient to punish and deter these defendants." It further alleged that Dellard was an employee of Spread Your Wings and was acting in the course and scope of her employment, and that Spread Your Wings ratified her acts by failing to "reprimand, demote, or terminate her, nor did they do anything else to evidence disapproval of Dellard's conduct."

II.    *Respondents' Demurrer*

Dellard and Spread Your Wings generally demurred to Valero's first amended complaint on the ground that it failed to state facts sufficient to constitute a cause of action against them. (Code Civ. Proc., § 430.10, subd. (e).) In support of this ground, they argued that they enjoyed absolute immunity to civil liability under section 15634(a) as Dellard was a "care custodian" providing services to a " '[d]ependent adult' " under sections 15610.17 and 15610.23, respectively, and she was therefore a "mandated reporter" under section 15630.

---

[5] Barton did not demur with respondents to the first amended complaint and Valero's claim against him was not disposed of by the judgment on appeal. Barton is therefore not a party to this appeal, and we do not here address Valero's claim against him.

As Dellard enjoyed this absolute immunity, even if her report about Valero had been knowingly false, so did her alleged employer, Spread Your Wings.

Valero's opposition to the demurrer attempted to avoid respondents' claim to statutory immunity by contending that because Dellard's reporting of dependent-adult abuse by Valero had been knowingly false, it was not based on " 'an incident that reasonably appears to be physical abuse' " or one that could give rise to Dellard having " 'reasonably suspect[ed] that abuse' " (citing § 15630, subd. (b)), thus triggering the mandatory reporting obligation. As the subject of Dellard's reporting was not "a known or suspected instance of abuse" that compelled mandatory reporting within the meaning of section 15634(a), according to Valero, the absolute immunity afforded by this subdivision to mandatory reporters did not extend to Dellard or Spread Your Wings, notwithstanding their status as mandatory reporters.

In other words, according to Valero, there is no immunity extended to a mandatory reporter who "fabricates an instance of abuse" because the protection of section 15634(a) afforded to mandatory reporters reaches only reports of "known or suspected" instances of abuse and a complete fabrication is not such an incident. Valero further sought to separate Dellard's act of reporting Valero's alleged abuse of Barton from her post-reporting coercion of Barton to falsely corroborate Dellard's accusation. Valero contended that this later conduct by Dellard exceeded any statutory immunity Dellard enjoyed as a mandated reporter for reports of abuse in any event.

Relying principally on *Easton v. Sutter Coast Hospital* (2000) 80 Cal.App.4th 485 (*Easton*) and *Santos v. Kisco Senior Living, LLC* (2016) 1 Cal.App.5th 862 (*Santos*), the trial court in a written order sustained respondents' demurrer to the first amended complaint without leave to amend, concluding that Dellard and Spread Your Wings as mandated reporters enjoyed

8

absolute and broad immunity under section 15634(a), even if Dellard's reporting about Valero had been knowingly false; that Dellard's alleged later conduct of coercing Barton to corroborate her false report was readily distinguishable from the facts of *James W.* and was thus also immune from suit; and that the deficiencies in the first amended complaint could not be cured by further amendment.[6]

Entry of judgment of dismissal as to Spread Your Wings, Dellard, and defendant Andrew Serry Dumbuya followed, from which Valero timely appealed.

DISCUSSION

I.  *Standard of Review*

We begin with the standard of review on appeal from an order sustaining a demurrer, appealable here from the ensuing judgment of dismissal. "On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well[-]settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865; see also *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) In reviewing the sustaining of a demurrer, we address whether the results, and not the trial

---

[6] Valero does not claim on appeal that the trial court abused its discretion by not allowing her leave to amend. And she offers no ways in which the pleading could be further amended to become viable. We therefore do not address the trial court's having sustained respondents' demurrer without, as opposed to with, leave to amend.

9

court's reasons, are correct. (*Perkin v. San Diego Gas & Electric Co.* (2014) 225 Cal.App.4th 492, 501.)

    II.    *The Act and Relevant Law Construing and Applying It*

As noted, the trial court here relied on *Easton* and *Santos* as dictating its result. The *Santos* court, quoting liberally from *Easton*, discussed the Act, highlighting its emphasis on the reporting of abuse of elders and dependent adults and overcoming perceived obstacles to this reporting as underlying legislative purposes. (See, e.g., §§ 15600, subd. (i) [express intent to establish framework for reporting and investigation of elder and dependent-care abuse]; 15601 [express purposes of the Act include reporting of abuse and providing protection for reporters]; 15630 [duties of mandated reporters and criminal consequences for the failure to report]; 15630.1 [civil penalties for failure to report financial abuse]; 15634 [immunity from liability of persons authorized to report and availability of claims procedure for attorney fees incurred in defense of dismissed actions or to a mandatory reporter as prevailing party].) *Santos* further addressed how the Act's provisions affecting reporting have been construed and applied, including by cases analogizing to parallel provisions in the Child Abuse and Neglect Reporting Act, at Penal Code section 11164, et seq. Finding *Santos*'s discussion apt for present purposes, we quote liberally from it.

    "The Act 'represents the Legislature's response to the problem of unreported elder abuse which came to its attention in the early 1980's.' (*Easton, supra*, 80 Cal.App.4th at p. 490.) 'The focus of the Act has always been to encourage the reporting of abuse or neglect.' (*Id.* at p. 491.)" (*Santos, supra*, 1 Cal.App.5th at p. 870.)

    Under the Act, "[a] person who has assumed full or intermittent responsibility for the care or custody of an elder or dependent adult . . . is a

10

mandated reporter."[7] (§ 15630, subd. (a).) Mandated reporters are statutorily required to report suspected instances of abuse of an elder or dependent adult: "A mandated reporter who, in his or her professional capacity, or within the scope of his or her employment, has observed or has knowledge of an incident that reasonably appears to be physical abuse, as defined in Section 15610.63, . . . is told by an elder or dependent adult that they have experienced behavior . . . constituting physical abuse, as defined in Section 15610.63, . . . or reasonably suspects that abuse, shall report the known or suspected instance of abuse . . . immediately or as soon as practically possible." (*Id.*, subd. (b)(1).) The failure by a mandated reporter to report abuse of an elder or dependent adult, or who impedes or inhibits a report of such abuse by another, in violation of section 15630 is a misdemeanor, with heightened punishment if the abuse results in death or bodily injury. (*Id.*, subd. (h).) And the intentional concealment by a mandated reporter of their failure to report an incident known by the reporter to be abuse or severe neglect of an elder or dependent adult is a continuing criminal offense. (*Ibid.*)

"The Act contemplates that the appropriate authorities will undertake an investigation into such reports in order to protect the elderly person [or dependent adult]. For example, the Act provides that, 'it is the intent of the Legislature in enacting this chapter to provide that . . . local law enforcement agencies shall receive referrals . . . from any mandated reporter submitting reports . . . and *shall take any actions considered necessary to protect the elder or dependent adult and correct the situation and ensure the individual's safety*. (§ 15600, subd. (i), italics added; see *People v. Davis* (2005) 126 Cal.App.4th

---

[7] There is no dispute in this case that Dellard and Spread Your Wings qualify as mandated reporters under section 15630, subdivision (a) as they each meet the broad definition of a "care custodian" under section 15610.17.

11

1416, 1435 (*Davis*) ['The enactment of such a comprehensive statutory scheme, which not only requires designated professionals to report known or suspected abuse but also sets up a system of outside agencies mandated to investigate reports of such abuse, amply demonstrates the scope and severity of the problem of elder and dependent adult abuse as perceived by the Legislature']; *Easton, supra*, 80 Cal.App.4th at p. 493 ['The focus of the statutory scheme is to encourage prompt reports *so as to protect the victim of the suspected abuse*' (italics added)].)" (*Santos, supra*, 1 Cal.App.5th at p. 871.) The criminal provisions of section 15630 for the failure to report "further the statute's purpose of fostering 'the broadest possible reporting of incidents of known and suspected abuse of elder and dependent adults' and have been construed to impose 'criminal liability for failure to report, without regard to intent or negligence.' (*Davis, supra*, 126 Cal.App.4th at p. 1437.)" (*Santos, supra*, 1 Cal.App.5th at p. 871.)

"In order to further ensure that mandated reporters comply with their reporting obligations, section 15634[(a)] 'create[s] an absolute privilege in those individuals required to make such reports.' (*Easton, supra*, 80 Cal.App.4th at pp. 489, 494 ['Immunity from reporting suspected abuse is crucial to ensure compliance with the reporting obligation'].) Section 15634's immunity provision provides in relevant part: 'No care custodian . . . who reports a known or suspected instance of abuse of an elder or dependent adult shall be civilly or criminally liable for any report required or authorized by this article.' (*Id.*, subd. (a).)" (*Santos, supra*, 1 Cal.App.5th at pp. 871–872.)

"In *Easton*, the court was 'called upon to construe the breadth of immunity from civil liability conferred by . . . section 15634.' (*Easton, supra*, 80 Cal.App.4th at p. 488.) In that case, a physician made a report to sheriff's deputies based on information that the physician had received from a nurse

12

who had unsuccessfully attempted to persuade the plaintiff to take his mother to the hospital. (*Id.* at p. 489.) Authorities acted on the report by removing the plaintiff's mother from his home and taking her to the hospital. (*Ibid.*) The *Easton* court considered whether the physician and the nurse were immune from liability for [various torts] premised upon the report and the seizure of the elderly woman. (*Id.* at pp. 489–490.) At the time of the incident, former section 15630, subdivision (b) provided that a mandated reporter who ' "has *observed* an incident that reasonably appears to be physical abuse" ' was required to report such abuse. (*Easton, supra*, at p. 491, italics added, quoting former § 15630, subd. (b).)" (*Santos, supra*, 1 Cal.App.5th at p. 872.)

"The *Easton* court first concluded that the immunity provided in section 15634 to mandated reporters was absolute, rather than qualified. The *Easton* court reasoned: 'Based on the purpose of the immunity provision and upon the Legislature's drafting of section 15634, we conclude that the privilege created by the section is absolute rather than qualified. The language of section 15634 distinguishes between mandated reporters of abuse who make required or authorized reports and nonmandated reporters. As to those who must report, the rule is sweeping in its breadth—no health practitioner who reports shall be civilly liable for any report. However, the section goes on to create only a qualified privilege for "[a]ny other person reporting." Such nonmandated reporters "shall not incur civil or criminal liability as a result of any report authorized by this article, unless it can be proven that a false report was made and the person knew that the report was false." (§ 15634[(a)].) The plain meaning of the statutory language is that for mandated reporters the truth or falsity of the report is of no moment—the privilege is absolute.' (*Easton, supra*, 80 Cal.App.4th at pp. 491–492.)" (*Santos, supra*, 1 Cal.App.5th at p. 872.)

"The *Easton* court then considered whether the physician and the nurse were entitled to immunity, notwithstanding that they had failed to 'comply with the reporting method in [former] section 15630' (*Easton, supra*, 80 Cal.App.4th at p. 492), in that the nurse had not *personally* called law enforcement, but instead had relayed information concerning the abuse to the physician, who called law enforcement. The *Easton* court 'reject[ed] a strict reading of the reporting condition—namely that reports be made by one who "has observed" a reportable incident—as inconsistent with either the letter or spirit of the statutory scheme.' (*Id.* at p. 493.) The *Easton* court reasoned that while a physician's reliance on a nurse's report of suspected abuse 'was not expressly envisioned by the statutory scheme in effect as of [the time of the incident] the Legislature had in fact already taken action to amend the statute so that such reliance would be expressly permitted.' (*Id.* at p. 494 [referring to an amendment to the statute requiring a mandated reporter who ' "has observed or who *has knowledge* of an incident," ' quoting § 15639, subd. (b)(1), as amended by Stats. 1998, ch. 980, § 1, p. 7525].) The *Easton* court continued, 'Clearly, the purpose of the statutory scheme of which section 15630 is a part and the precise language of the 1998 version of the section, would not be advanced by denying immunity to either [the nurse] or [the physician].' (*Easton, supra*, at p. 494.)" (*Santos, supra*, 1 Cal.5th at pp. 872–873.)

Thus, as chronicled in *Santos*, one feature of *Easton* is its construction and application of the Act's broad and absolute immunity to mandated reporters to recognize and implement the clear and primary legislative purpose of removing obstacles that hinder reporting, even when considering the Act's statutory text against plain-meaning arguments that would undermine and thwart this overarching purpose. *Easton* is not alone in this; *Santos* followed suit, and also relied on cases in the parallel child-abuse-reporting context that

14

took the same approach to attempts by plaintiffs in that context to narrow the absolute immunity afforded to mandated reporters.

As further discussed in *Santos*, and as recognized by the parties in this case, the mandated-reporter immunity provided in the predecessor child-abuse context is relevant here. "In interpreting and applying section 15634, we may consider its 'predecessor statutes, which created reporting requirements and immunity for mandated reporters of child abuse.' (*Easton, supra*, 80 Cal.App.4th at p. 492.) Such case law is highly relevant in light of the similarity of the two immunity provisions. (Compare . . . § 15634 ['No care custodian . . . who reports a known or suspected instance of abuse of an elder or dependent adult shall be civilly or criminally liable for any report required by this article'] with Pen. Code, § 11172 ['No mandated reporter shall be civilly or criminally liable for any report required or authorized by this article'].)" (*Santos, supra*, 1 Cal.App.5th at p. 873.)

"Courts have repeatedly recognized the breadth of the immunity provision contained in Penal Code section 11172. (See, e.g. *B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 193 ['The Legislature . . . grant[ed] . . . broad immunities for those mandated reporters who report suspected instances of child abuse']; *Thomas v. Chadwick* (1990) 224 Cal.App.3d 813, 821 (*Thomas*) ['To encourage reporting, the Legislature granted reporters broad immunities to obviate the chilling effect the spectre of civil lawsuits would have upon a reporter's willingness to become involved'].) 'In order to promote the purpose of the act to protect abused children, [Penal Code] section 11172 provides that mandated reporters of child abuse are absolutely immune from liability.' (*Robbins* [*v. Hamburger Home for Girls* (1995)] 32 Cal.App.4th [671,] 679; see also *Arce* [*v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th [1455,]

15

1485 [(*Arce*)] ['The immunity extends even to negligent, knowingly false, or malicious reports of abuse'].]" (*Santos, supra*, 1 Cal.App.5th at p. 873.)

"Further, courts have broadly *interpreted* the immunity provided at Penal Code section 11172 beyond its literal text in order to effectuate this purpose. For example, in *Storch v. Silverman* (1986) 186 Cal.App.3d 671, 677 (*Storch*), despite the fact that the version of the statute applicable in the case was limited to persons ' "*who report*[] a known or suspected instance of child abuse" ' (*id.* at p. 675, fn. 3, italics added, quoting former Pen. Code, § 11172, subd. (a)), the court concluded that the statute covered 'those mandated reporters *who are involved in the identification* of an instance of child abuse but do not personally report it to the authorities.' (*Storch, supra*, at p. 681, italics added.) In reaching this conclusion, the court reasoned: 'Team immunity is consistent with the purpose and intent of the Legislature in promoting the reporting of child abuse. Limitation of immunity to the person making the telephone call to the agency or signing the report would defeat that purpose.' (*Ibid.*)" (*Santos, supra*, 1 Cal.App.5th at pp. 873–874.)

"In addition, . . . courts have broadly interpreted the child abuse mandated[-]reporter[-]immunity provision to apply to certain *conduct* related to a reporting event. For example, in *Krikorian v. Barry* (1987) 196 Cal.App.3d 1211 (*Krikorian*), the court considered whether 'mandatory reporters [are] completely immune from liability for professional services rendered in connection with the identification or diagnosis of suspected cases of child abuse, or just for the act of reporting.' (*Id.* at p. 1222.) The *Krikorian* court rejected the argument that mandated reporter immunity extended only to the 'act of reporting' (*ibid.*), reasoning in part: '[L]imiting immunity to the protection of professionals against lawsuits resulting from the *act of reporting* would defeat the Legislature's goal of promoting increased reporting of child abuse. The

16

Legislature has identified the fear of civil liability for allegedly false reports as a major deterrent to the reporting of suspected cases of child abuse by professionals. Recent revisions to the Child Abuse [and Neglect] Reporting Act have been largely directed at reducing or eliminating, to the extent possible, professional[s'] fear of litigation resulting from required reports. A law conferring "absolute" immunity for the act of reporting suspected child abuse, but *not* for professional activities contributing to its identification, would not likely allay the fear of a prospective reporter that an angry parent might initiate litigation for damages, following a report which is subsequently proven to be mistaken' (*id*. at pp. 1222–1223). Ultimately, the *Krikorian* court held, 'Insofar as liability for damages to a person falsely accused of child abuse is concerned, we conclude that absolute immunity to professionals for conduct giving rise to the obligation to report, such as the collection of data, or the observation, examination, or treatment of the suspected victim or perpetrator of child abuse, performed in a professional capacity or within the scope of employment, as well as for the act of reporting.' (*Id*. at p. 1223.)" (*Santos, supra*, 1 Cal.App.5th at p. 874.)

"In *Arce, supra*, 211 Cal.App.4th 1455, the Court of Appeal applied *Krikorian*, among other cases, in concluding that a hospital social worker . . . and the hospital for which she worked were immune from [tort liability for acts of the social worker beyond the mere reporting]. (*Id*. at pp. 1491–1492.) . . . The plaintiffs claimed that the trial court had erred in concluding that the defendants were immune from claims premised on such conduct, arguing, '[the nurse's] conduct did not involve the act of reporting child abuse within the meaning of Penal Code section 11172 and therefore was not protected under the statute.' (*Ibid*.) The *Arce* court rejected this argument noting, 'Cases analyzing Penal Code section 11172 have concluded that the statute provides immunity to

17

claims predicated on false and malicious reports of abuse as well as conduct committed in furtherance of diagnosing whether abuse occurred.' (*Ibid.*) Thus, even though the plaintiffs argued that [the nurse]'s conduct was ' "harassing, antagonizing, and threatening" ' (*id.* at p. 1496), the *Arce* court concluded that the trial court had properly determined that '[t]he conduct alleged against [the nurse] falls within [Penal Code] section 11172' (*ibid.*, italics omitted)." (*Santos, supra*, 1 Cal.App.5th at pp. 874–875.)

"Courts have also concluded that immunity under Penal Code section 11172 may 'cloak[] the mandated reporter with immunity for activity [occurring] after the report of suspected child abuse . . . is made.' (*Ferraro v. Chadwick* (1990) 221 Cal.App.3d 86, 92 (*Ferraro*).) In *Ferraro*, the court noted that Penal Code section 11172 extends immunity 'not only to "required" or mandated reporting but to another distinct category of reporting[,] that which is "authorized" by the [Child Abuse and Neglect Reporting] Act.' (*Ferraro, supra*, at p. 93, quoting Pen. Code, § 11172, subd. (a); see also § 15634 providing immunity 'for any report required or *authorized* by this article' (italics added).) The *Ferraro* court concluded that 'communications by a mandated reporter to . . . law enforcement agencies that are statutorily entitled to receive and investigate reports of child abuse are "*authorized*" communications or reports under the [Child Abuse and Neglect Reporting Act], and, therefore, [a]re protected by the immunity of [Penal Code] section 11172, subdivision (a).' (*Ferraro*, at p. 95, italics added; see *Thomas, supra*, 224 Cal.App.3d at p. 822 ['It would be anomalous to conclude that the reporter's "required" report of suspected child abuse is privileged, but that the legislatively contemplated subsequent communications concerning the incident would expose the reporter to potential civil liability'].) The *Ferraro* court reasoned in part: 'Certainly, it is reasonable to infer the Legislature (1) anticipated that in the course of an

investigation into suspected child abuse, the reporter . . . is going to be contacted and interviewed by the agency conducting the investigation and (2) sanctioned such communication between the reporter and the investigating agency. It is also reasonable to infer the Legislature foresaw the possibility of the reporter being contacted by the district attorney with respect to criminal investigations.' (*Ferraro*, at pp. 94–95.)" (*Santos, supra*, 1 Cal.App.5th at pp. 875–876.)

The *Santos* court itself went on to apply the broad and absolute immunity afforded to mandated reporters by section 15634(a) by determining that the mandated reporters there were not only immune from civil liability for an actual report but also immune from the plaintiff's false-arrest claim that was premised on conduct "integrally related to a report of suspected elder abuse and thus constituted 'authorized' activity within the meaning of section 15634[(a)]." (*Santos, supra*, 1 Cal.App.5th at p. 876.)

This targeted conduct in *Santos* was by a mandated reporter in connection with police investigation in response to the actual report of suspected elder abuse. The mandated reporter had signed a form to effectuate a citizen's arrest but the court concluded there was no evidence that the reporter had interrogated or prosecuted the plaintiff, as had been alleged.[8] (*Santos, supra,* 1 Cal.App.5th at pp. 876–877.) The court, analogizing to the parallel child-abuse context, rejected the claim that the immunity afforded to mandated reporters in the elder-abuse context under section 15634(a) did not extend to conduct in addition to the act of reporting. "[C]ourts have concluded that mandated reporters in the child abuse context may not be held liable for '*conduct* committed in furtherance of diagnosing whether abuse occurred.' (*Arce,*

---

[8] The *Santos* case was on appeal after a jury trial, not, as here, after a facial attack on the pleadings.

*supra*, 211 Cal.App.4th at p. 1492, italics added.) We see no reason why this same principle should not apply when interpreting the nearly identical immunity provision in the Act. For the same reason, we conclude that case law in the child abuse context providing that mandated reporters are immune for communications with law enforcement that occur *after* an initial report of abuse [but] that are related to abuse (see *Ferraro, supra*, 221 Cal.App.3d at pp. 92, 95), should apply with equal force in interpreting section 15634." (*Santos, supra*, 1 Cal.App.5th at p. 877, fn. omitted.) The mandated reporter's "act in signing a citizen's arrest form constituted activity that was so integrally related to a report of elder abuse that it constituted conduct that falls within the 'sweeping . . . breadth' of the immunity afforded in section 15634. (*Easton, supra*, 80 Cal.App.4th at p. 491.)" (*Id.* at pp. 877–878.)

After all, according to the *Santos* court, the act of signing a form to effectuate a citizen's arrest "was far more similar to an act of 'reporting' than other conduct to which courts have determined immunity extends. (See *Arce, supra*, 211 Cal.App.4th at pp. 1491–1492 [making harassing phone calls]; *McMartin v. Children's Institute International* (1989) 212 Cal.App.3d 1393, 1401 (*McMartin*) [interviewing children]; *Krikorian, supra*, 196 Cal.App.3d at pp. 1213, 1222–1223 [providing psychotherapeutic services]; *Storch, supra*, 186 Cal.App.3d at p. 674 & fn. 2 [conducting medical examinations and a pathology analysis].)" (*Santos, supra*, 1 Cal.App.5th at p. 878.)

Finally, the *Santos* court distinguished the facts there from those in *James W.*, *supra*, 17 Cal.App.4th 246, relied on by Valero here. In *James W.*, which emanated from the same court as *Santos*, the court "concluded that mandated[-]reporter immunity did not apply to the conduct of a family counselor and foster parent who, for two and one-half years after a report of sexual abuse, allegedly coerced a child into falsely naming her father as the

perpetrator of the abuse. (*Id.* at pp. 258–259.) The *James W.* court concluded that the defendants, who had '[not] identified or reported child abuse,' were not entitled to immunity because they 'voluntarily assumed roles of those who, having received the report and determined the identity of the perpetrator, search[ed] for corroboration and/or attempt[ed] to pressure a witness to get a conviction.' (*James W.*, at p. 256.)" (*Santos, supra*, 1 Cal.App.5th at p. 879, fns. omitted.) Distinct from this, the *Santos* defendant, who had effectuated a citizen's arrest in close connection and time proximity to a mandated report, unlike the defendants in *James W.*, had not " 'usurped the function of the authorities (*Robbins, supra*, 32 Cal.App.4th at p. 680, discussing *James W.*) such that he would not be entitled to mandated reporter immunity under *James W.* [Citation].)" (*Santos, supra*, 1 Cal.App.5th at p. 879.)

Having provided this legal framework and background, we now address Valero's specific claims.

III.    *Absolute Immunity for Mandated Reporters Under Section 15634(a) Extends to Knowingly False Reports*

Valero contends that despite the established law we have discussed above, the plain meaning of the precise statutory language affording absolute and broad immunity to mandated reporters under section 15634(a) does not extend to knowingly false reports.[9] This argument is premised on several isolated bits of statutory text from the Act that, according to Valero, qualify the requirement of a mandatory reporter to report an incident of abuse (apart from having been told by the victim that they have experienced physical abuse) and

_____

[9] Valero concedes that section 15634(a) provides absolute and broad immunity to mandated reporters, including for reports that turn out to be untrue. But she separates such reports from those that are knowingly fabricated or "concocted" at the outset by the reporter, attempting to avoid immunity only for the latter.

21

limit it to only those instances where the reporter has an objective and reasonable basis for suspecting the abuse. Valero urges that this qualification coextensively cabins the absolute immunity afforded to mandatory reporters under section 15634(a) to reports factually rooted in that objective and reasonable basis.

First, Valero points out that section 15630, subdivision (b)(1) requires that a "mandated reporter who . . . has *observed or has knowledge* of an incident that *reasonably appears* to be physical abuse . . . or is told by an elder or dependent adult that they have experienced behavior . . . constituting physical abuse, . . . or *reasonably suspects* that abuse" must report "the *known or suspected* instance of abuse." (Italics added.) Thus, she argues, apart from being told by an elder or dependent adult that they have experienced abuse, a mandated reporter is bound only to report abuse that they have observed or know about, or reasonably suspect.

Second, Valero observes that the provision for immunity from liability for mandated reporters in section 15634(a) says in relevant part: "No . . . mandated reporter . . . who reports a *known or suspected* instance of abuse of an elder or dependent adult shall be civilly or criminally liable *for any report required or authorized by this article*." (Italics added.) This immunity, she contends, is coextensive with the requirement to report, which, per her argument, is limited to instances of *known or suspected* abuse, or abuse told to the mandatory reporter by the elder or dependent adult. This conclusion, according to Valero, is mandated by the pure statutory text quoted above and excludes from immunity any reports of abuse that are fabricated and knowingly false, as such reports cannot be grounded in actual observation, knowledge, or reasonable suspicion and are therefore not required to be made under the Act.

Valero further cites the Act's express purposes listed at section 15601, which include the provision of "protection under the law for all those persons who report suspected cases of abuse, *provided that the report is not made with malicious intent.*" (§ 15601, subd. (c), italics added.) As Valero has alleged Dellard's intent in making a knowingly falsified report of abuse to be malicious, she argues that these allegations and the plain meaning of sections 15630, subdivision (b)(1) and 15634(a) quoted above, taken together, remove Dellard's report (and later conduct) from the Act's immunity protection.

In essence, based on these pieces of text from the Act, Valero urges us to read the *qualified* immunity in section 15634(a) that is extended to *nonmandated* reporters, which is expressly and distinctly limited to "any report authorized by this article, *unless it can be proven that a false report was made and the person knew that the report was false*" (italics added), to be indistinguishable from the absolute immunity there afforded to mandated reporters, with the protection extended to them likewise containing this same limitation excluding knowingly false reports. While we understand the argument, this reading ignores the marked difference in text between the two types of immunity. It also ignores the primary legislative purposes of the Act as a whole to increase the reporting of elder and dependent adult abuse and to remove the chilling disincentives, such as fear of suit, to that reporting, especially for mandated reporters who are uniquely in positions in the course of their work or employment to become privy to instances of abuse. And it ignores that as a practical matter, true immunity from suit would be utterly illusory if all a plaintiff had to allege in any case against a mandated reporter is that the report of abuse was not just false, but knowingly false. This would thwart the clear twin legislative goals of the Act to increase the reporting of incidents of

elder and dependent-care abuse and to reduce the forces that chill such reporting, such as the fear of suit, meritorious or not.

"When interpreting a statute, 'our core task . . . is to determine and give effect to the Legislature's underlying purpose in enacting the statutes at issue.' (*McHugh v. Protective Life Ins. Co.* (2021) 12 Cal.5th 213, 227 (*McHugh*); accord, *Jarman v. HCR ManorCare, Inc.* (2020) 10 Cal.5th 375, 81 (*Jarman*).) 'We first consider the words of the statutes, as statutory language is generally the most reliable indicator of legislation's intended purpose. [Citation.] We consider the ordinary meaning of the relevant terms, related provisions, terms used in other parts of the statute, and the structure of the statutory scheme.' (*McHugh*, at p. 227; accord, *Jarman*, at p. 381 [' "We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment." '].) 'It is a basic canon of statutory construction that statutes in pari materia should be construed together so that all parts of the statutory scheme are given effect.' (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1090–1091; accord, *Law Finance Group, LLC v. Key* (2021) 67 Cal.App.5th 307, 317, review granted Nov. 10, 2021 (S270798).)" (*Hirschfield v. Cohen* (2022) 82 Cal.App.5th 648, 660 (*Hirschfield*).)

" 'We have long recognized the principle that even though a statute may appear to be unambiguous on its face, when it is considered in light of closely related statutes[,] a legislative purpose may emerge that is inconsistent with, and controlling over, the language read without reference to the entire scheme of the law.' (*Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 50.) ' "If two seemingly inconsistent statutes conflict, the court's role is to harmonize the law. [Citations.] We presume that the Legislature, when enacting a statute, was

24

aware of existing related laws and intended to maintain a consistent body of rules." ' [Citations.]" (*Hirschfield, supra*, 82 Cal.App.5th at pp. 660–661.)

" ' "If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." ' (*Jarman, supra*, 10 Cal.5th at p. 381.) However, '[i]f the relevant statutory language is ambiguous, we look to appropriate extrinsic sources, including the legislative history, for further insights.' (*McHugh, supra*, 12 Cal.5th at p. 227; accord, *Mendoza v. Fonseca McElroy Grinding Co., Inc.* (2021) 11 Cal.5th 1118, 1125 [' "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." '].)" (*Hirschfield, supra*, 82 Cal.App.5th at p. 661.)

Applying these rules of statutory construction, we reject Valero's argument that the plain meaning of sections 15630, subdivision (b)(1) and 15634(a) together compel the conclusion that the immunity extended to mandated reporters under the Act does not extend to knowingly false reports. The text of section 15634(a) on its face cannot be read to apply or extend the express limitation for knowingly false reports on immunity for nonmandated reporters to mandated reporters, for whom this express qualification on immunity is absent. This textual distinction alone defeats Valero's plain-meaning argument that we should treat the protections afforded to mandated and nonmandated reporters alike. (*People v. Hillhouse* (2003) 109 Cal.App.4th 1612, 1618 [court must presume that the Legislature's failure to restrict the definition of a term in certain statutory provisions when it did so in other provisions of the same statutes was intentional].) Had the Legislature intended to similarly limit the immunity afforded to mandated reporters under the Act to exclude knowingly false reports, as it did with nonmandated reporters, it knew

how to do so. (*Ibid.*; see also *Ajaxo, Inc. v. E\*Trade Financial Corp.* (2020) 48 Cal.App.5th 129, 198 [when construing the words of a statute, primary goal is to determine and give effect to the underlying purpose of the law; in doing so, a court looks to the words of the statute, giving them a plain and commonsense meaning, and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose].) We thus cannot treat the express limitation on immunity for false reports applicable to nonmandated reporters that is omitted with respect to mandated reporters as if the omission did not exist.

Even crediting for the sake of argument that the language Valero cites from sections 15630, subdivision (b)(1) and 15634(a) suggests a requirement of knowledge of abuse—or at least an objective and reasonable basis for suspicion—as a basis for a mandated report and therefore as a threshold for absolute immunity, we would land on the existence of a statutory ambiguity. This ambiguity lies again in the obvious distinction in the Legislature's treatment of immunity for mandated versus nonmandated reporters in section 15634(a), with knowingly false reports carved out only for the latter. Valero's argumentative focus is to qualify the immunity for mandated reporters to instances of abuse that are either known or reasonably suspected, but the effect of her argument is to obliterate the express distinction between the two types of immunity for the different types of reporters, the dividing line for which is reports that are knowingly false. Applying the traditional rules of statutory construction as outlined above would get us to consideration of legislative intent and purposes in resolving that ambiguity. Those purposes here require no speculation. They are to increase the reporting of elder and dependent-adult abuse and remove disincentives to that reporting. For all the reasons extensively discussed in *Easton* and *Santos*, as well as in *Arce* and

26

*Storch* in applying the parallel provisions of Penal Code section 11172, these purposes readily compel the conclusion that the absolute immunity afforded to mandated reporters by the Legislature in section 15634(a)—"sweeping in its breadth" (*Easton, supra*, 80 Cal.App.4th at p. 491)—extends to knowingly false or fabricated reports.

Among these reasons are that the Legislature enacted section 15634(a) in 1985 some five years *after* the parallel Penal Code section 11172 had been so interpreted by courts and amended to delete the requirement that a mandated reporter's immunity for a false report turned on knowledge of the falsity. (*Easton, supra*, 80 Cal.App.4th at p. 492 [Legislature's 1980 deletion of requirement in Pen. Code, § 11172 that a mandated reporter's immunity from liability for a false report of child abuse turn on knowledge of falsity changed such immunity from qualified to absolute]; *Storch, supra*, 186 Cal.App.3d at pp. 671, 679–681 [same]; *Arce, supra*, 211 Cal.App.4th at p. 1492; see p. 1493 [absolute immunity afforded to mandated reporters of child abuse extends to " 'false and malicious' " reports].) The Legislature is presumed to have been aware of this interpretation and amendment in the parallel statutory scheme and to have intended the same result when it enacted section 15634(a), mirroring the same language. (*People v. May* (2020) 47 Cal.App.5th 1001, 1008–1009 [Legislature presumed to know the law when enacting new legislation or not acting in the face of judicial construction of statutes, and its intentions may be inferred from this action or inaction].)

Consideration of the Act's preamble, which includes among its express purposes at section 15601, subdivision (c) the "protection under the law for all those persons who report suspected cases of abuse, *provided that the report is not made with malicious intent*" (italics added) does not alter our conclusion. While "statements of [express] purpose or intent of legislation in a preamble"

27

may " 'properly be utilized as an aid in construing a statute,' " they are "not conclusive" or controlling and " 'do not confer power, determine rights, or enlarge the scope of a measure.' " (*Jackpot Harvesting Co., Inc. v. Superior Court* (2018) 26 Cal.App.5th 125, 153 (*Jackpot*); see also *Carter v. Dept. of Veteran's Affairs* (2006) 38 Cal.4th 914, 925 [same].) Such statements can be " 'illuminating if a statute is ambiguous' " and " 'may aid in the construction of doubtful clauses,' " but they " 'may not overturn a statute's language' " or " 'control [its] substantive provisions.' " (*Jackpot*, at p. 153.)

Further, the Act's general preamble at section 15601 with the clause limiting its purpose of protection for reporters of abuse to those not acting maliciously was enacted in 1982 (Stats. 1982, ch. 1184, § 3). Section 15634(a) was enacted later, in 1985 (Stats. 1985, ch. 1164, § 11), and is specific to immunity from liability under the Act. As discussed, it provides absolute immunity for mandated reporters as distinct from qualified immunity for nonmandated reporters. " ' "If conflicting sections cannot be reconciled, later enactments supersede earlier ones [citation], and more specific provisions take precedence over more general ones." [Citation.]' [Citations.]" (*People v. Superior Court (Ortiz)* (2022) 81 Cal.App.5th 851, 854.) As section 15634(a) was later enacted and is more specific to the topic of immunity, to the extent the Act's earlier and more general preamble excludes protection for reporters of abuse who act "with malicious intent" (§ 15601, subd. (c)), this preamble cannot override or negate the more generous immunity afforded to mandated reporters at section 15634(a).

In sum, we see no reason to part with *Easton* and *Santos*, including their reliance on *Storch* and *Arce*'s construction of Penal Code section 11172's parallel immunity provisions for mandated reporters of child abuse, in applying the absolute the immunity provision of section 15634(a) to mandated reporters of

28

elder and dependent-adult abuse. We accordingly reject Valero's arguments urging that we apply the Act so as to exclude from the absolute immunity afforded to mandated reporters those reports that are fabricated or knowingly false.

IV.    *Dellard is Also Immune From Suit For Allegations of Her Post-Reporting Coercion of Barton to Corroborate the Report*

Valero contends that even if we conclude Dellard is immune from liability for her alleged knowingly false report to law enforcement about Valero's abuse of Barton, Dellard's later conduct of "influencing, intimidating, and coercing" Barton to corroborate her false report is still actionable. While acknowledging factual differences, Valero relies on *James W., supra,* 17 Cal.App.4th 246, which applied Penal Code section 11172, for support. She argues that like in *James W.*, Dellard's later coercion of Barton was conduct apart from any of her duties as a mandated reporter and was instead as a "—'private citizen[] [who became] deeply enmeshed in investigatory or prosecutorial activities and [took] on functions of the police.' " Her conduct, Valero argues, therefore exceeds the scope of reporting immunity under section 15634(a). We reject this contention.

As noted above, the *Santos* court rebuffed efforts by the plaintiff in that case to bring the facts within the holding of *James W.*, finding the case before it "in sharp contrast." (*Santos, supra*, 1 Cal.App.5th at p. 878.) In *James W.*, the court concluded that the immunity afforded under Penal Code section 11172 did not extend to conduct by foster parents and a family counselor, who, for over two and one-half years after the child victim had initially reported to hospital staff that a man had come through her bedroom window and hurt her, engaged in a "campaign to convict the father and have [the child] adopted." (*James, W., supra*, 17 Cal.App.4th at p. 249.) The defendants were alleged to have, "after [the] child abuse had been positively identified and reported" (*id.* at p. 256), and

29

for years, pressured the child and other family members to falsely accuse the father while simultaneously concealing evidence suggesting that a third party had committed the abuse and "inducing confessions and accusations by fraud, coercion, and perjury" (*id*. at p. 249).

The *James W.* court held that Penal Code section 11172 did not apply to provide immunity under these facts because the conduct at issue was not done to identify whether child abuse had occurred, but rather to identify the perpetrator of the abuse—an investigatory function. The court noted a "dichotomy" under the law between persons required to report instances of child abuse and officials who are responsible for investigating and prosecuting allegations of abuse. (*James, W., supra*, 17 Cal.App.4th at p. 257.) Under this framework, Penal Code section 11172 was intended to protect individuals required to report child abuse while other statutes exist to protect government officials, who, having received a report of abuse, are responsible for investigating and prosecuting the perpetrator. The *James W.* defendants were outside the protections of Penal Code section 11172 because they had "[come] onto the scene after the . . . child abuse had been positively identified and reported [and then] voluntarily assumed roles of those who, having the report and determined the identity of the perpetrator, search for corroboration and/or attempt to pressure a witness to get a conviction." (*James W., supra*, at p. 256.) The *James W.* court further distinguished *Krikorian* and *McMartin*, where expert witnesses against whom claims were made had been retained to evaluate whether any child abuse had occurred and were granted immunity, as opposed to the defendants in *James W.*, who were not dealing with "a suspected victim preliminary to a determination of child abuse." (*Id.* at p. 257.) "Whatever justifications exist for extending the immunity of the reporting act to forensic

teams investigating whether a child has actually been abused, they [were] clearly not present" in *James W.* (*Id.* at p. 258.)

In *Santos*, the court likewise distinguished the defendant's conduct—signing a form to effectuate a citizen's arrest—from that in *James W.,* as action undertaken by a mandated reporter in close connection with an official investigation of elder abuse. (*Santos*, *supra*, 1 Cal.App.5th at p. 878.) The conduct occurred "while law enforcement officers were physically at the scene conducting an investigation, and in close temporal proximity to the initial report of abuse." (*Id.* at p. 879, fn. omitted.) The *Santos* court also pointed to *Ferraro, supra*, 221 Cal.App.3d at page 92, and *Thomas, supra*, 224 Cal.App.3d at pages 816–817, as instances in which post-reporting conduct that was held immune was much more distant in time from the actual reporting as existed in *Santos*. (*Santos, supra*, 1 Cal.App.5th at p. 879, fn. 19 [more than two years and more than one month, respectively].) Further, there was no evidence the defendant in *Santos* had " 'usurped the function' of the authorities [citation] such that he would not be entitled to mandated[-]reporter immunity under *James W.* [Citation.]" (*Id.* at p. 879.) *Santos* also looked to *Krikorian, supra*, 196 Cal.App.3d at pages 1222–1223, as authority for the notion that the Legislature's goal of promoting the increased reporting of abuse precluded limiting immunity to acts of reporting only, and that the legislative goal required extending that protection also to other conduct related to reporting.

*Arce*, too, distinguished *James W.*, rejecting the plaintiff's argument there that the defendant had effectively engaged in investigative rather than reporting activities, precluding immunity. (*Arce, supra*, 211 Cal.App.4th at p. 1497.) The *Arce* court found the timing of the pre-reporting conduct there, the lack of usurpation by the defendants of official investigatory functions, and the short duration of the defendants' conduct all in contrast to the facts of *James*

31

*W.*, which had merely held that Penal Code section 11172 "does not apply to activities that continue more than two years after the initial report of abuse by parties who are not acting as reporters." (*James W., supra*, 17 Cal.App.4th at p. 253.) *Arce* therefore extended statutory immunity beyond actual reports of child abuse to even allegedly tortious conduct committed in furtherance of diagnosing whether the abuse had occurred. (*Arce, supra*, 211 Cal.App.4th at pp. 1491–1492, 1496.)

We conclude that Dellard's alleged post-reporting conduct in coercing Barton to corroborate her false report of abuse is, like in *Santos* and *Arce*, distinct from the circumstances of *James W.* For one thing, as respondents point out, Dellard was herself a mandated reporter of abuse, not a receiver of a report who, after the fact and upon the report's receipt, attempted to investigate, prosecute, or respond to it in an unauthorized manner, and in doing so, usurped or attempted to usurp these official functions. And unlike in *James W.*, Dellard, a mandated reporter, is not alleged to have done anything by which she could be said to have become so "deeply enmeshed in investigatory or prosecutorial activities." (*James W., supra*, 17 Cal.App.4th at p. 257.)

Second, like in *Santos*, Dellard's alleged coercion of Barton occurred close in time, was a follow-up to her own report of Valero's abuse, and concerned the same alleged incident of Valero having tried to smother Barton. (See also *Arce, supra*, 211 Cal.App.4th at pp. 1491–1492; *Krikorian, supra*, 196 Cal.App.3d at pp. 1213, 1222–1223.) In other words, Dellard's alleged post-reporting conduct involved getting Barton's—the victim's—confirmation of the same report. This conduct, by a mandated reporter, is closely connected both in time and in content to Dellard's own report, for which we have already concluded she has absolute immunity, and it therefore falls within the same immunity protection of section 15634(a).

## DISPOSITION

The judgment of dismissal is affirmed. Respondents are entitled to their costs on appeal.

_____
WILLIAMS, J.*

WE CONCUR:



_____
GREENWOOD, P.J.




_____
LIE, J.




*Valero v. Spread Your Wings, LLC et al.*
H049119
_____

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 2/9/23

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| LYNDA VALERO, | H049119<br>(Santa Clara County Super.<br>Ct. No. 18CV338394) |
| Plaintiff and Appellant, | |
| v. | ORDER MODIFYING OPINION<br>AND CERTIFYING OPINION |
| SPREAD YOUR WINGS, LLC et al., | FOR PUBLICATION |
| Defendants and Respondents. | NO CHANGE IN JUDGMENT |


BY THE COURT:


It is ordered that the opinion filed on January 11, 2023, be modified as follows:


1. At the end of the first full paragraph on page 12, after the sentence ending "(*Santos, supra*, 1 Cal.App.5th at pp. 871–872.)," add as footnote 8 the following footnote, which will require renumbering of all subsequent footnotes:

[8] Section 15634(a) provides: "No care custodian, clergy member, health practitioner, mandated reporter of suspected financial abuse of an elder or dependent adult, or employee of an adult protective services agency or a local law enforcement agency who reports a known or suspected instance of abuse of an elder or dependent adult shall be civilly or criminally liable for any report required or authorized by this article. Any other person reporting a known or suspected instance of

abuse of an elder or dependent adult shall not incur civil or criminal liability as a result of any report authorized by this article, unless it can be proven that a false report was made and the person knew that the report was false. No person required to make a report pursuant to this article, or any person taking photographs at his or her discretion, shall incur any civil or criminal liability for taking photographs of a suspected victim of abuse of an elder or dependent adult or causing photographs to be taken of such a suspected victim or for disseminating the photographs with the reports required by this article. However, this section shall not be construed to grant immunity from this liability with respect to any other use of the photographs.

There is no change in judgment.

The opinion in the above-entitled matter filed on January 11, 2023, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

WILLIAMS, J.*

_____

GREENWOOD, P.J.

_____

LIE, J.

*Valero v. Spread Your Wings, LLC et al.*
H049119

---

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| Trial Court: | Santa Clara County Superior Court |
| | Superior Court No.: 18CV338394 |

Trial Judge:  The Honorable
Thang Nguyen Barrett


Attorneys for Plaintiff and Appellant          Law Offices of Joseph S. May
Lynda Valero:                                  Joseph S. May

                                               Law Offices of Sanjay S. Schmidt
                                               Sanjay S. Schmidt


Attorneys for Defendants and                   Lewis Brisbois Bisgaard &
Respondents Spread Your                         Smith LLP
Wings LLC et al.:
                                               Jeffry A. Miller
                                               Tracy D.Forbath
                                               Reuben B. Jacobson
                                               Ciara M. Dineen


Valero v. Spread Your Wings, LLC et al.
H049119